George M. ROMERO, Appellant,

v.

Gary O. COX, Appellee.

No. S–11267.

Supreme Court of Alaska.

Aug. 31, 2007.

George M. Romero, pro se, Anchorage.

M. Gregory Oczkus, Greg Oczkus Law Offices, Anchorage, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

George Romero and Gary Cox executed an "Earnest Money Receipt and Agreement" for Romero's purchase of three lots and a mobile home. Romero took possession of the property, but the sale never closed. More than three years after the agreement was executed, Cox sued for forcible entry and detainer (FED) and damages. Romero vacated the premises by stipulation but counterclaimed for specific performance and damages. The superior court granted Cox partial summary judgment on the specific performance claim because Romero was unable to perform the contract. Following trial, the court awarded Cox damages for the property's reasonable rental value and for utility bills Cox had paid while Romero lived on the property. The court found that Romero failed to prove that he was entitled to any damages, but did not address Romero's contention that Cox failed to return twenty apple trees that had been left on the property when Romero vacated it.

Romero appeals pro se.

We affirm the superior court's decision, but remand for consideration of Romero's claim that Cox is liable for failing to return the twenty apple trees.

## II. FACTS AND PROCEEDINGS

By "Earnest Money Receipt and Agreement" signed in February 1998, George Romero agreed to buy from Gary Cox a mobile home and three lots in the Frislie Subdivision in Anchorage. The price was $110,000. Romero paid Cox earnest money of $1,000 and was to pay $14,000 more at closing, for a total down payment of $15,000. Cox financed the remaining $95,000 at eight percent over fifteen years. Closing was to occur within sixty days after Cox obtained a title insurance policy or report, and Cox was to obtain the policy or report within 120 days of April 14, 1998.

On April 17, 1998 Cox obtained a "Preliminary Commitment for Title Insurance" effective as of April 14. On May 23 Romero wrote Cox a check for $4,000 with the notation "partial closing" on its face. Romero never paid Cox the remaining $10,000. According to Cox, Romero moved onto the property in April 1998.

Cox's attorney served Romero with a notice to quit in July 2001. Cox then sued for forcible entry and detainer and damages, and on July 30 the parties signed a stipulation requiring Romero to vacate the premises and remove his personal effects by August 7. The parties later extended this deadline to September 30, but Romero did not remove all of his personal property by that time.

Romero filed an answer and a counterclaim for specific performance and damages.[1] Upon motion by Cox, the superior court granted partial summary judgment on the specific performance claim because Romero was unable to deposit "the accumulated interest, real property taxes paid by the Plaintiff[,] . . . and the balance of the down payment." The court calculated the total

---

1. Romero filed the counterclaim in the state district court, which dismissed the counterclaim because the court lacked jurisdiction and Romero failed to pay the filing fee. Romero was later permitted to file in the superior court a counterclaim asserting the same claims and a more specific prayer for damages.

amount due under the agreement as $41,455.71.[2]

Because Romero had not removed his personal property, a second order required Romero to remove his property by May 31, 2002 except for items covered by snow. They were to remain on the land until Cox's attorney notified Romero that the snow had melted, at which time Romero could enter and remove them.

Although Cox had already been granted summary judgment on the specific performance claim, Romero moved for summary judgment on that claim. He also requested certification under Alaska Civil Rule 54(b) and relief from judgment under Alaska Civil Rule 60(b). A hearing was set for November 4, 2002. Because Romero did not appear on time for oral argument, the court ruled that it would rely on the filings. On November 6 the court denied Romero's "summary judgment" motion, which the court described as a motion to reconsider, and also denied his Rule 54(b) and Rule 60(b) motions. Romero moved for reconsideration and again requested specific performance. The superior court denied the motion as moot because the property had already been sold to a third party.

The court held a bench trial on the breach of contract and damages claims in September 2003. Romero and Cox gave different explanations at trial for why the sale never closed. Romero testified that Cox failed to remove trash and "contaminated soil" from the property and failed to vacate certain easements. Cox testified that he had been ready to close in 1998, but that Romero had said he could not close until his divorce was final and his assets were freed. Cox and his witnesses disputed Romero's testimony about the condition of the property. Cox's son, Fred Cox, testified that he and his brother cleaned up the property and removed the trash and that Romero seemed pleased with their work. Cox testified that a later buyer had the property tested for contamination and found none. Cox also testified that Romero never complained that Cox had not vacated the

easements until Cox began proceedings to evict Romero.

Cox testified at trial that during the three years Romero occupied the property before eviction, he had moved a log cabin onto the property and operated a landscaping business. After Romero's eviction, the parties agreed that Romero could remain on the property for two more months at $700 per month.

On the issue of damages, Cox and an expert witness testified at trial to the rental value of the property. Cox also testified that while Romero lived on the property, Cox had to pay fuel oil and electric bills totaling $1,729.82.

Romero testified to the value of improvements he made to the trailer and to the value of landscaping work he performed on the property. Romero also testified that he had been unable to remove twenty of his apple trees from the property due to snow. He estimated their total value at between $800 and $1,200. When he later returned for the trees, they were gone. Although Cox's attorney was to let Romero know when the snow melted so he could remove his remaining property, Romero testified that Cox's attorney never contacted him.

The superior court ruled for Cox and awarded him damages equivalent to the property's rental value. The superior court also concluded that Romero's counterclaims were without merit and that he was not entitled to any credit for the improvements he made to the property. The decision did not mention the apple trees.

Romero raises twenty-two issues on appeal.

## III. DISCUSSION

### A. Standard of Review

We review the trial court's factual determinations, including those pertaining to the credibility of witnesses, for clear error.[3]

2. Romero has consistently argued that he should have been required to pay only $10,000 to close the deal.

3. *Soules v. Ramstack*, 95 P.3d 933, 936–37 (Alaska 2004) (footnotes omitted).

We will conclude that there was clear error only if "after a thorough review of the record, we come to a definite and firm conviction that a mistake has been made."[4] All factual findings are reviewed "in the light most favorable to the prevailing party below."[5]

We apply our independent judgment to questions of law.[6] When the meaning of a contract is at issue, we review the superior court's interpretation of the contract terms using our independent judgment.[7]

Although we judge a pro se litigant's briefing by a "less demanding standard,"[8] if a pro se litigant raises issues "in cursory fashion, without citing any authority," they are waived.[9]

## B. Romero Has Waived Eight Issues on Appeal.

Romero has failed to adequately brief eight of his twenty-two appellate issues. Romero mentions seven of these issues only in the part of his brief titled "Issues Presented for Review," and does not discuss them at all in the remainder of the brief. He discusses the eighth of these issues in his brief, but it is not clear what legal argument Romero is making. Even if he had adequately briefed the issues, they appear to lack merit. We will briefly address these issues in turn.

Romero first argues that the court erred by dismissing his original counterclaim. The record reveals that the claim was dismissed for his failure to pay the filing fee. Moreover, he was permitted to refile his counterclaim in 2003, so he was not injured by the dismissal of his original counterclaim.

Second, Romero contends that the superior court erred by charging him both interest and rent. He apparently thinks he was charged both rent and interest on the purchase price. But the court order awarded prejudgment interest on the fair rental value of the property, not on the purchase price. Awarding prejudgment interest on the rental award was appropriate here.[10]

Romero's third argument is that the superior court erred by finding that he failed to mitigate damages by not closing when he had the ability to do so. But the superior court never found that Romero failed to mitigate damages.

Romero next argues that he was entitled to credit for his improvements to the mobile home. The superior court found that the improvements had not been completed and that they did not add value to the mobile home. Romero has not argued that these findings were clearly erroneous.

Romero's fifth argument is that the superior court erred by failing to certify the partial summary judgment under Rule 54(b). We have held that "[a] partial summary judgment that decides only some of the issues pertinent to a single claim is interlocutory and not within the scope of Civil Rule 54(b)."[11] Here, the partial summary judgment motion only addressed specific performance, so certification under Rule 54(b) was not required, and there is no indication the court abused its discretion in declining to grant the motion.

Romero next asserts that the superior court failed to recognize genuine issues of material fact. Because a trial was held on the issue of damages, the superior court did recognize that there were some disputed issues of material fact. Romero might be arguing that there were other issues of material fact that he was not permitted to raise at trial. But because Romero does not explain

---

4. *Id.* at 936.

5. *N. Pac. Processors, Inc. v. City & Borough of Yakutat,* 113 P.3d 575, 579 (Alaska 2005) (footnote omitted).

6. *N.W. Cruiseship Ass'n of Alaska, Inc. v. State, Office of Lieutenant Governor, Div. of Elections,* 145 P.3d 573, 576 (Alaska 2006) (citing *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

7. *N. Pac. Processors, Inc.,* 113 P.3d at 579.

8. *Peterson v. Ek,* 93 P.3d 458, 464 n. 9 (Alaska 2004).

9. *Lee v. State,* 141 P.3d 342, 352 n. 38 (Alaska 2006) (citing *Peterson,* 93 P.3d at 464 n. 9).

10. AS 09.30.070(a).

11. *Zeilinger v. Standard Alaska Petroleum Co.,* 769 P.2d 436, 436 (Alaska 1989).

what these other issues might be, he has waived this argument.

■ Romero's seventh argument is that the superior court erred when it denied his Rule 60(b) motion for relief from judgment. Romero has waived this argument because he does not explain why he is entitled to relief from judgment.

■ Romero's eighth argument is that the superior court failed to apply the parol evidence rule and the statute of frauds. We cannot determine why Romero thinks the statute of frauds and parol evidence rule were misapplied. He argues that his agreement with Cox was fully integrated, but does not argue that the superior court relied upon extrinsic evidence to vary or alter the terms of the written agreement. The issue is therefore waived.[12]

We next address Romero's remaining fourteen issues.

## C. The Trial Court Did Not Erroneously Construe the Earnest Money Agreement as a Lease.

Romero raises various contentions that center around his argument that the superior court erroneously interpreted the earnest money agreement as a lease. Thus, he argues that the court should not have interpreted the agreement as a lease; that if he was in fact a tenant, the mobile home was not up to the standards established in the Uniform Residential Landlord and Tenant Act (URLTA); that if there was a tenancy, the court erred by not finding that the premises were uninhabitable until he renovated them;

and that because the agreement was not a lease, he should have been foreclosed upon instead of evicted.

■ Contrary to Romero's assertions, the superior court never found that the earnest money agreement was a lease. The court instead described it as "an agreement whereby the owner (Cox) would sell the property to Romero for $110,000." Romero might be confused by the fact that Cox was awarded damages that included an amount equal to the "fair rental value" of the premises. Under the doctrine of quantum meruit, when a valid contract does not exist, a plaintiff is entitled to "the reasonable value of the services rendered to the defendant."[13] Although Cox and Romero initially signed a contract for sale, the contract was no longer valid because Romero and Cox failed to close within the specified period of time, and because the contract did not entitle Romero to take possession of the premises before closing. Cox was therefore entitled to recover the fair rental value.

Because there was no lease, Romero cannot argue that the URLTA was violated or that the premises were uninhabitable. The URLTA does not apply to land sale contracts.[14]

■ Romero alternatively argues that if the agreement was not a lease, an FED action was improper. Romero contends that he should have instead been foreclosed upon or ejected. He is incorrect. It is proper to bring an FED action even when the URLTA does not apply.[15] If a person continues to

---

**12.** Romero also asserts that Cox is "estopped from claiming that Romero will not perform under the terms of the sale-purchase agreement." Because Romero admitted in an affidavit that he could not pay $41,000 to close the deal, Cox is not estopped from arguing that Romero was unable to perform.

**13.** *Cf. Krossa v. All Alaskan Seafoods, Inc.*, 37 P.3d 411, 419 (Alaska 2001) (holding that plaintiff in employment law case may recover in quantum meruit for services rendered).

**14.** AS 34.03.330(b)(2).

**15.** AS 09.45.090(b) states in part:
    (b) For property to which the provisions of AS 34.03 (Uniform Residential Landlord and

Tenant Act) do not apply, unlawful holding by force includes each of the following:
    . . . .
    (2) when, following service of a written notice to quit,
    . . . .
    (F) a person in possession continues in possession of the premises
    (i) at the expiration of the time limited in the lease or agreement under which that person holds . . . .
Although Romero and Cox's written agreement did not entitle Romero to take possession of the property, the parties orally agreed that he could move onto the premises before the sale closed.

remain on the property "at the expiration of the time limited in the lease *or agreement* under which that person holds,"[16] he may be evicted. Cox testified that he permitted Romero to move onto the property because he expected Romero to pay him the balance of the down payment. When Romero failed to pay the balance of the down payment within the specified time, Cox was entitled to evict him.

### D. The Superior Court Correctly Denied Romero's Motion for Partial Summary Judgment.

■ Romero seems to argue that he was entitled to partial summary judgment on the breach of contract issue because Cox breached the agreement. Summary judgment is proper if there are "no genuine issues of material fact."[17] As Romero argues, parties may rely on verified pleadings in their summary judgment motions.[18] Romero's verified counterclaim asserts that Cox did not comply with his statutory duties. Romero argues that Cox "confessed that he was in material breach of the contract" and cites to Cox's supplemental affidavit filed May 6, 2002. In that affidavit, Cox merely admitted that a car remained on the premises, and stated that he was willing to remove it "at any time." These statements do not establish a material breach of contract entitling Romero to partial summary judgment.

Cox stated in the same affidavit that he believed that he and his sons had fulfilled all of his obligations to Romero under the agreement. Because the parties disputed whether Cox had fulfilled his duties, there was a genuine issue of material fact, and it would have been error to grant summary judgment to Romero.

### E. The Superior Court Did Not Err when It Ordered Romero To Deposit More than $41,000 To Maintain an Action for Specific Performance.

■ Romero seems to argue that because Cox allegedly failed to perform his duties under the agreement, Romero, in order to obtain specific performance, was not obligated to pay the entire down payment, interest on the principal, and property taxes. The order granting Cox partial summary judgment on the specific performance claim required Romero to deposit $41,455.71 to obtain specific performance; that amount included the down payment, interest, and property taxes. Romero asserts that this amount should have been reduced by "costs incurred when Romero complied with the conditions which should have been undertaken by Cox." But Romero has never proved that he spent any money to remedy the alleged defects in the property. He also provides no legal support for this proposition.

■ A buyer must "be ready, willing and able to perform" when a contract is formed, when a lawsuit is filed, and during the pendency of the lawsuit.[19] We have held that the buyer must tender all unpaid money, interest, and costs,[20] even if the seller is responsible for the contract delay.[21] Our case law has not created an exception to this rule for buyers who assert that they are entitled to damages. We decline to do so here, particularly because Romero has presented no evidence that he spent any money curing the alleged defects in the property.

---

**16.** AS 09.45.090(b)(2)(F)(i) (emphasis added).

**17.** *Bennett v. Weimar*, 975 P.2d 691, 699 (Alaska 1999) (noting that parties may rely upon verified pleadings when opposing summary judgment).

**18.** *Id.* at 695.

**19.** *Foster v. Hanni*, 841 P.2d 164, 172 (Alaska 1992) (holding that superior court must determine whether option owner was "ready, willing and able" to perform both when contract was formed and when suit was filed and prosecuted).

**20.** *See, e.g., Lewis v. Lockhart*, 379 P.2d 618, 624 (Alaska 1963) (holding that purchasers who were entitled to specific performance had to pay interest on the purchase price, taxes, and other costs).

**21.** *Dillingham Commercial Co. v. Spears*, 641 P.2d 1, 10 (Alaska 1982) (holding that vendor responsible for contract delay is entitled to purchase price and interest).

**F. The Superior Court Did Not Err in Finding that Cox Did Not Breach the Contract.**

Romero asserts that the superior court erred by finding that Cox did not breach the contract. Romero also argues that he relied to his detriment on Cox's promise to perform and that Cox's delay in performing prejudiced Romero.

█ Cox testified at trial that he had been willing to conclude the deal, but Romero kept making excuses for why he could not close. Although Romero testified that he did not close because Cox refused to remove contaminated soil from the property, Cox testified that a subsequent purchaser tested the soil and found no contamination. The superior court found that when the testimony conflicted, Cox and his witnesses were credible, and Romero was not. The clear error standard applies to the court's findings of fact, particularly those based on witness credibility.[22] Given the trial evidence, it was not clear error to credit Cox's testimony over Romero's.

Because the superior court concluded that the delay was Romero's fault, Cox did not breach the contract, and Romero has failed to prove detrimental reliance.

**G. The Superior Court Did Not Err in Failing To Find that the Title Was Unmarketable.**

For three of his appellate points, Romero gives two reasons why he believes that title was unmarketable. First, he argues that sewage and contaminated soil on the property made title unmarketable. Second, he argues that title was unmarketable because the mobile home and garage encroached on public easements.

█ We do not need to reach the question whether title was marketable; even if it was not, Romero is not entitled to damages because he was unable to perform his return

promise. Romero admitted in his April 26, 2002 affidavit that he was unable to pay the $41,000 needed to close the deal. Because Romero was unable to pay the purchase price at the time it was demanded, he is not entitled to damages. According to the Restatement (Second) of Contracts § 244, even a party in "total breach" will not be required to pay damages "if it appears after the breach that there would have been a total failure by the injured party to perform his return promise."[23]

**H. The Superior Court Did Not Err in Failing To Find that Cox Committed Fraud or Applied Duress.**

Romero argues that fraud is a "possible motive by Cox" and requests a trial on his claim that Cox committed fraud. Romero was permitted at trial to argue that Cox committed fraud, and the superior court found that there was "no credible evidence of fraud done by Cox." The court also found that there was no "violation of good faith and fair dealing by Mr. Cox." Romero provides no record citations to support his claim that Cox committed fraud or applied duress. We therefore have no basis for concluding that the superior court erred in finding that Cox's conduct was not fraudulent or otherwise wrongful.

**I. It Was Error Not To Determine Whether Cox Was Responsible for Nursery Stock that Romero Left on His Property.**

Romero argues that the superior court erred when it failed to find that Cox was a bailee of Romero's nursery stock, and was therefore liable for its disappearance. Romero testified at trial that he was prevented from removing twenty apple trees from Cox's land. According to the May 23, 2002 court order, Cox's attorney was to notify Romero when the snow melted so that Romero could remove any of his property that remained on Cox's land.[24] Romero tes-

---

**22.** *Soules,* 95 P.3d at 936–37 ("[T]he trial court's findings regarding the credibility of the witnesses will be reversed only if clearly erroneous.") (citation omitted).

**23.** RESTATEMENT (SECOND) OF CONTRACTS § 244 (1981).

**24.** The writ of assistance that accompanied the order states "[t]he Plaintiff shall be responsible for the return, storage or disposal of any person-

tified that Cox's attorney never notified him that the snow had melted, and that when he later went to view the property, the trees were gone.

This issue is not well briefed, but Romero seems to believe that Cox is responsible for the loss of the trees, and that he is entitled to their fair value. Romero testified that the trees were worth between $800 and $1,200. Cox is aware of the argument, as he states in his brief, that Romero is requesting "reimbursement for the value of his nursery stock." Cox asks us to "rely on the trial court's findings." But a careful review of the trial court's findings reveals that the court did not address the apple trees. Although all conflicting testimony was resolved in Cox's favor, Cox did not testify about whether Romero was permitted to remove the apple trees. In fact, Cox's only testimony about the apple trees was that they were still on the property in July 2001. Romero's claim should have been decided following trial. We therefore remand for a determination whether Cox is liable for not returning the apple trees.

## IV. CONCLUSION

We REMAND for a determination whether Cox was liable for not returning the apple trees. The superior court may base its decision on this claim on the record as it stands, or it may choose to allow the parties to submit additional evidence. We otherwise AFFIRM all disputed rulings by the superior court.

---

al property of the Defendant." The order contains slightly self-contradictory language, permitting Cox to "dispose of any personal property remaining on the premises," but containing an exception for "any items ... buried by snow."