NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JOEL FARWELL BENNETT and ALASKA WILDLIFE ALLIANCE, ) ) | Supreme Court No. S-18496 |
| Appellants, ) | Superior Court No. 1JU-20-00879 CI |
| v. ) | MEMORANDUM OPINION AND JUDGMENT* |
| STATE OF ALASKA, DEPARTMENT OF FISH & GAME, and DOUGLAS VINCENT-LANG, in an official capacity, ) | No. 2051 – October 23, 2024 |
| Appellees. ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Daniel Schally, Judge.

Appearances: Joseph W. Geldhof, Law Office of Joseph W. Geldhof, Juneau, for Appellants. Cheryl R. Brooking, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I.    INTRODUCTION

Environmental advocates brought suit challenging the State of Alaska, Department of Fish & Game's (ADF&G's) decision to open the 2020-2021 wolf harvest

---

\*    Entered under Alaska Appellate Rule 214.

on Prince of Wales Island. The advocates alleged that in light of a 2019 change in ADF&G's game management plan, and a record-setting wolf harvest the season following that change, ADF&G's decision to open the 2020-2021 wolf harvest violated the "sustained yield" principle of the Alaska Constitution. After a five-day bench trial, the superior court ruled in favor of the State, concluding that it satisfied its constitutional mandate to ensure sustained yield of the wolves.

On appeal the advocates raise new challenges against the 2019 change in management plan. We conclude that we are unable to reach these new challenges, raised for the first time on appeal, and that the other arguments the advocates raise are without merit. We therefore affirm the superior court's decision in all respects.

## II.    FACTS AND PROCEEDINGS

### A.    Alaska Board Of Game Adopts A New Wolf Management Plan, And A Record-Setting Harvest Follows.

This case concerns the State's management of wolves in Game Management Unit 2 (GMU2). GMU2 encompasses parts of Southeast Alaska including Prince of Wales Island. Wolves on Prince of Wales Island are an isolated group "with little immigration" from elsewhere. Prior to 2019, management of the wolves was based on harvest quotas and in-season harvest monitoring. When wolf harvest approached the official quota, ADF&G and the United States Forest Service (USFS) would close the hunting and trapping seasons by emergency order.[1] But since this led to unpredictable and short harvest seasons, ADF&G, USFS, the Alaska Board of Game[2]

---

[1]    In Alaska, under state law, ADF&G manages both the wolf hunting and wolf trapping seasons. We refer to both as the wolf harvest season; however, different regulations govern wolf hunting and wolf trapping.

[2]    The Alaska Board of Game is tasked with adopting regulations for hunting, trapping, and "the taking of game" subject to requirements of the Administrative Procedure Act. *See* AS 16.05.255(a).

(the Board), and other governmental entities developed a new management plan based on population objectives, referred to as "Proposal 43."

Under the new plan, the length of the harvest season would be adjusted by comparing recent wolf population estimates to the designated population objective. In January 2019 the Board adopted Proposal 43 and set a population objective of 150-200 wolves. The 2019 hunting and trapping seasons began mid-November on both State and federal lands.[3]

After the new management plan was implemented, ADF&G announced in March 2020 that a record number of wolves — 165 — had been killed during the 2019 harvest season in GMU2, whereas the most recent wolf population estimate available from fall 2018 reflected a range of 147-202 wolves. The State agreed that the 2019 "wolf harvest was high and[,] if repeated year after year, would be unsustainable." After this harvest, Joel Farwell Bennett and the Alaska Wildlife Alliance (collectively Bennett) sought to prevent further wolf harvest until ADF&G had an up-to-date population estimate.

**B.    Bennett Petitions ADF&G To Keep The Wolf Harvest Season Closed And Files A Complaint For Declaratory And Injunctive Relief.**

Between August and September 2020 Bennett twice wrote to ADF&G Commissioner Doug Vincent-Lang to ask that he decline to open the upcoming 2020-2021 wolf harvest season. Bennett believed that allowing the harvest to proceed without a 2019 population estimate would likely harm the wolf population in GMU2 because the outdated figures from 2018 would not account for the record-setting harvest in 2019. In response to each letter, the commissioner determined there was no emergency and declined Bennett's request. He also noted that the fall 2019 population estimate would be available by October and that it would be referenced to determine the "appropriate fall 2020 harvest season length."

---

[3]    Only the management of state lands is at issue in this case.

In October 2020 Bennett filed a complaint for declaratory and injunctive relief against ADF&G and the Commissioner in his official capacity. Bennett's complaint sought to keep the 2020-2021 wolf harvest season in GMU2 closed because he believed that allowing the season to proceed would result in an unsustainable harvest of the wolves in violation of Article VIII, Section 4 of the Alaska Constitution (sustained yield principle).[4] He also sought a declaration that the Commissioner did not adhere to the sustained yield principle when managing the wolves in GMU2. Overall, Bennett's complaint focused on alleged acts and omissions of the Commissioner, with no allegations or claims specific to the Board's approval of Proposal 43. The complaint was never amended.

The same day Bennett filed his complaint, ADF&G announced that a public hearing would soon be held regarding the length of the 2020-2021 wolf harvest season. By that point, ADF&G had released an updated fall 2019 wolf population estimate of 316 wolves, which was much higher than the fall 2018 estimate of 147-202 wolves. Bennett disagreed with that estimate.[5]

In November 2020 ADF&G issued an emergency order limiting the length of the 2020-2021 wolf harvest season. The emergency order provided that the state wolf hunting season would run from December 1 to December 5, and the state wolf trapping season from November 15 to December 5. It also asked hunters and trappers

---

[4]     Alaska Const. art. VIII, § 4 ("[W]ildlife . . . and all other replenishable resources belonging to the State shall be utilized, developed, and maintained on the sustained yield principle, subject to preferences among beneficial uses.").

[5]     On October 29 Bennett filed for a temporary restraining order asking that the ADF&G rescind its conclusion that the 2019 wolf population estimate in GMU2 was 316 and that it "not proceed with any scheduled wolf harvests" until the figure and its accuracy were reviewed by the court. The superior court denied this request, reasoning that Bennett failed to demonstrate irreparable harm.

to seal[6] all wolves "promptly," as compared to the regulations in place that required wolves harvested in GMU2 to be sealed within 30 days of the seasons' end.

In March 2021 the Board amended Proposal 43 "so that all wolves taken in Unit 2 must be sequentially numbered/marked by the hunter or trapper, and hunters and trappers must call the department within 7 days of take to report the date and location of take, and all hides must be sealed within 15 days of take."[7]

## C. ADF&G Moves For Summary Judgment And Bennett Cross-Moves For Partial Summary Judgment.

In March 2021 ADF&G moved for summary judgment, arguing that Bennett had no actionable claim because he sought "a declaration and closure of the 2020-2021 wolf harvest" and "[n]either remedy [was] available." Bennett opposed the motion and filed a cross-motion for partial summary judgment.

Bennett's cross-motion asserted that the "essence" of what he sought was "that the hunting and trapping of wolves in GMU2 must adhere to the sustained yield principles required by the Alaska Constitution."[8] He contended more specifically that ADF&G's method for estimating wolf populations was inaccurate, in that the agency failed to account for all the ways wolves exit the population, implicating its ability to

---

[6] "Sealing refers to the placement of a tag or seal by an ADF&G representative, and may also involve the collection of some biological or harvest information." *Wolf Hunting in Alaska, Harvest Statistics*, ALASKA DEPT. OF FISH & GAME, https://www.adfg.alaska.gov/index.cfm?adfg=wolfhunting.harvest (last visited Sep. 13, 2024).

[7] Earlier that month, the Alaska Wildlife Alliance had commented in support of amending Proposal 43 and requested harvest reporting within 48 hours of the taking of a wolf and sealing within 5 days.

[8] During oral argument regarding the summary judgment motions, Bennett asserted this was not a case where he was "seek[ing] a judicial determination related to statutory law or regulations promulgated by the State."

provide for sustained yield.  Bennett also argued that his lawsuit was the "catalyst" that propelled changes to Proposal 43 and requested partial summary judgment in his favor.[9]

The court denied both motions.  Afterward ADF&G moved twice for clarification of the basis for the court's denial of its summary judgment motion.  The court provided clarification, explaining that among Bennett's claims, it discerned genuine disputes of material fact regarding the reliability of ADF&G's wolf population estimates.[10]  It also observed that at that time there was "no evidence" that ADF&G had considered significant factors, such as illegal killings and natural mortality, when adopting those estimates.

### D.     The Court Grants Judgment For ADF&G Following A Bench Trial.

A five-day bench trial commenced in April 2022.  A week before trial, Bennett submitted a trial brief in which he briefly argued, for the first time, that the Board's adoption of Proposal 43 was "devoid of the kind of reasoned analysis required by law."  He also reiterated his claim that ADF&G's method for estimating wolf populations was unreliable and therefore unconstitutional.

During trial, ADF&G objected to Bennett's late attempt to expand the issues being litigated so as to include the Board's consideration and adoption of Proposal 43.  ADF&G reasoned that Proposal 43 had not been raised in the complaint, discovery, or elsewhere in the suit until its appearance in Bennett's trial brief.  The court agreed, and did not allow Bennett to admit evidence or make arguments regarding the Board's consideration and adoption of Proposal 43 at trial.

In June 2022 the court issued a written decision in ADF&G's favor.  The decision addressed the claims stated in Bennett's complaint, rejecting Bennett's

---

[9]     In its response the State denied that any changes to Proposal 43 were "catalyzed" by the lawsuit and sought dismissal of all claims against it.

[10]    A court may only grant summary judgment if "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Alaska R. Civ. P. 56(c).

assertion that ADF&G's management of the wolf population in GMU2 was inconsistent with the sustained yield principle. The court held that ADF&G had demonstrated "that a carefully developed and adaptable management scheme has been instituted in GMU2." It also determined based on the testimony and evidence presented at trial that ADF&G had taken a "hard look" at "a wide variety of factors" impacting the wolves in GMU2 "and made decisions about how to address those issues in a 'reasoned' manner."[11]

Bennett moved for reconsideration, which the court denied. Bennett appeals. Because Bennett's arguments on appeal consist largely of claims that were not raised before the superior court, and because Bennett's preserved arguments on appeal lack merit, we affirm the superior court.

## III. STANDARD OF REVIEW

We review the superior court's findings of fact for clear error,[12] but "apply our independent judgment to questions of law."[13] Clear error exists if our "review of the record" leaves us with a "definite and firm conviction that a mistake has been made."[14]

---

[11] *See Sagoonick v. State*, 503 P.3d 777, 788 (Alaska), *reh'g denied* (Feb. 25, 2022) (describing "hard look" standard). The "hard look" standard is usually employed "[w]hen an executive agency decision about natural resources is challenged under article VIII" of the Alaska Constitution. *Id.* at 788. While here the court "recognize[d] that this case is not one involving an administrative appeal" of the Board's adoption of Proposal 43, it nevertheless utilized the "hard look" standard to evaluate the claims in Bennett's initial complaint, including whether the Commissioner's management of the 2020-2021 wolf harvest in GMU2 complied with sustained yield. Bennett does not challenge the court's application of the "hard look" standard on appeal.

[12] *Safar v. Wells Fargo Bank, N.A.*, 254 P.3d 1112, 1117 (Alaska 2011) (citing *Romero v. Cox*, 166 P.3d 4, 7-8 (Alaska 2007); Alaska R. Civ. P. 52(a)).

[13] *Romero*, 166 P.3d at 8.

[14] *Id.*

## IV. DISCUSSION

### A. Bennett's Primary Argument Is Not Properly Before Us On Appeal.

The thrust of Bennett's appellate argument, that the Board did not take a "hard look" at all of the issues impacting the wolves of GMU2 before it adopted Proposal 43, thereby violating the Alaska Constitution, was not properly presented or litigated before the superior court and cannot be considered by us on appeal.

Bennett's primary argument on appeal differs in both time and substance from the argument he litigated before the superior court — that ADF&G failed to adhere to sustained yield principles when it declined to keep the 2020-2021 wolf harvest closed. Bennett never pled claims pertaining to the Board's adoption of Proposal 43 in his initial complaint. Instead, his complaint focused on the Commissioner's decision not to close the 2020-2021 wolf harvest season in GMU2, asserting this decision was inconsistent with the sustained yield principle.

As Bennett conceded at oral argument, the claims raised in his complaint were not the claims he has addressed on appeal. He argues, based on a 2019 board meeting transcript, that the board failed to consider important factors before it adopted Proposal 43. However, the transcript was never admitted into evidence by the superior court, so it can be afforded no weight on appeal.[15] Bennett belatedly attempted to raise similar arguments before the superior court in his trial brief, submitted a week before trial began. ADF&G objected at trial to Bennett's late attempt to expand the issues to be litigated at trial, and the court sustained ADF&G's objection.[16] We further observe that Bennett never sought leave to amend his complaint to reflect new or additional

---

[15] *See Paula E. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 276 P.3d 422, 430 (Alaska 2012); *see also* Alaska R. App. P. 210(a).

[16] *See* Alaska R. Civ. P. 15(b) (allowing for consideration of issues that were "not raised by the pleadings" but were "tried by express or implied consent of the parties"). Here the State did not consent to the consideration of new issues at trial.

claims.[17]  In light of this, when the parties reached trial, the court properly limited the scope of its decision to the claims contained in Bennett's complaint.  We will not consider arguments on appeal that are outside the scope of claims Bennett litigated before the superior court.[18]

**B.   To The Extent Bennett Challenges The Superior Court's Findings And Conclusions Regarding Claims Raised Below, Those Challenges Lack Merit.**

To the extent Bennett raises viable arguments on appeal, they are without merit.  As a threshold matter, it is unclear whether Bennett is challenging the superior court's findings and conclusions regarding the accuracy of ADF&G's methodology for estimating wolf populations and according ability to manage the wolves of GMU2 in conformity with the sustained yield principle.[19]  But insofar as he is challenging those things, he identifies no clear error in the court's factual findings and no error in its legal conclusions.  The only cogent argument Bennett offers is that the court's final decision

---

[17]   *See* Alaska R. Civ. P. 15(a); *McAnally v. Thompson*, 397 P.3d 322, 327 (Alaska 2017) ("Alaska Civil Rule 15(a) provides that a party may amend a pleading only by leave of court or by written consent of the adverse party where leave is sought after a responsive pleading was filed.").

[18]   We further observe that in advancing his new argument regarding the Board's adoption of Proposal 43, Bennett urges us to adopt a federal "best available information" standard as an express requirement when the Board considers new proposals.  *See Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1068-69 (9th Cir. 2018); *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 995 (9th Cir. 2014) (explaining that under "best available science standard," "an agency must not 'disregard[] available scientific evidence that is in some way better than the evidence [it] relies on' " (alteration in original)).  This argument is not properly before us in this appeal; however, we note that we recently rejected a similar request in *Sitka Tribe of Alaska v. State, Alaska Dep't of Fish & Game*, 540 P.3d 893, 899 n.27, 900-02 (Alaska 2023).

[19]   At one point in his appellate brief, Bennett explicitly stated that "the manner by which the wolf population in the game management unit [is] counted" "is not at issue" in the case, but at a later point he seemed to impliedly reference this issue when discussing the court's clarification order.

contradicts its prior framing of the remaining issues of material fact that would need to be resolved at trial. He seeks remand because he contends "the trial court determined before trial that the [Board] had failed to consider relevant and material factors when it adopted the new management scheme," and requests that we direct the superior court to "adhere" to those "initial findings."

As ADF&G recognizes, though, the superior court's clarification order regarding its denial of ADF&G's motion for summary judgment does not undermine its ultimate, post-trial findings of fact. In its final decision, the court explained that after reviewing the testimony and evidence presented during a weeklong bench trial, "it became apparent" that Bennett could not meet his burden to prevail on his claims. In particular the court noted that contrary to Bennett's arguments during trial, the State presented evidence that it "is very much keeping tabs on real-time data throughout the harvest season." The court also found that ADF&G "takes its role seriously and considers a wide variety of factors," including "public input, new advancements in science and technology, changes in other predator and prey populations that affect the wolves, to name just a few," in making decisions regarding management of the wolf population. The court's earlier clarification order, issued prior to the testimony and evidence offered at trial, was made merely to explain what issues of material fact would need to be resolved at trial. Those issues of material fact were then litigated at trial, and Bennett was unable to prove his claims by a preponderance of the evidence. Bennett's reliance on the court's identification of issues in its pretrial clarification order does not support an assertion of clear error or error in the court's ultimate post-trial findings and conclusions.

In sum, the superior court's conclusion that Bennett failed to demonstrate that ADF&G's management of the wolf population in GMU2 violated the sustained yield principle is supported by the record, including the evidence and testimony considered at trial, and Bennett has failed to identify any clear error in the superior court's factual findings or error in its legal analysis. We affirm in all respects.

## V. CONCLUSION

For the foregoing reasons, the superior court's decision is AFFIRMED.