**Kalindi McALPINE, Appellant,**

v.

**Shaun PACARRO, Appellee.**

No. S–13903.

Supreme Court of Alaska.

Oct. 21, 2011.

Kalindi McAlpine, pro se, Alachua, Florida, Appellant.

Herbert A. Viergutz, Law Office of Herbert A. Viergutz, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

A mother appeals the superior court's denial of an evidentiary hearing for her motion to modify child custody. Because the mother was entitled to an evidentiary hearing in this case, we remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

In December 1999, while Kalindi McAlpine and Shaun Pacarro were living together, Shaun assaulted Kalindi. Shaun pleaded guilty to, and was convicted of, domestic violence assault. In 2000 Kalindi and Shaun married. Shaun's conviction was set aside in early 2001 after he met conditions of a suspended imposition of sentence.

In 2004 Kalindi petitioned for an ex parte domestic violence protective order against Shaun, asserting that Shaun abused her throughout their entire relationship even af-ter he was arrested in 1999. The district court granted the petition after finding by a preponderance of the evidence that Shaun committed a crime involving domestic violence against Kalindi.

Kalindi and Shaun divorced in 2005. Proceeding pro se, they entered into a court-approved custody settlement agreement: they agreed to joint legal custody of their three minor children, two daughters and one son, with Kalindi having primary physical custody and Shaun having visitation. In October 2006, again proceeding pro se, Kalindi and Shaun entered into a second court-approved custody settlement agreement. This agreement allowed Kalindi to move with the children to Florida and gave Shaun visitation with the children during the summer. There is no indication in the record that the parties mentioned the 1999 and 2004 (or any other) incidents of domestic violence during these proceedings. Kalindi moved with the children to Florida in July 2007.

### B. Proceedings

#### 1. 2007 motions, December 2007 hearing, and December 2007 interim order

In October and November 2007, after Kalindi moved to Florida with the children, Shaun filed motions asserting his visitation was denied. Kalindi later filed, in Alaska, a petition for ex parte and long-term domestic violence protective orders against Shaun; her ex parte motion was granted on December 8.

Kalindi and Shaun appeared pro se at a December 11 hearing on the visitation motion and long-term domestic violence petition. Kalindi acknowledged that she had not let Shaun see the children, but asserted this was because Shaun had threatened her and the children and had abused the children.

The superior court questioned Shaun about his 1999 conviction. Shaun confirmed that he pleaded guilty and was convicted of domestic violence assault against Kalindi. The court noted that Shaun's conviction resulted in a suspended imposition of sentence, probation for one year, and a condition that Shaun attend and complete a domestic violence intervention program. Shaun asserted that he

completed the required program in July 2000.

The superior court noted that Kalindi had petitioned for a domestic violence protective order against Shaun in 2004. The court pointed to the 2004 petition as one example of how Kalindi is "familiar with the system [and] ... knows how [domestic violence] protective orders work." The court did not question Shaun or Kalindi about the events underlying the 2004 petition and order.

The superior court vacated the ex parte domestic violence protective order and denied the petition for a long-term protective order, finding Kalindi's "testimony regarding her allegations of domestic violence by [Shaun] against her and the children to be false" and that there was "no credible evidence of domestic violence by [Shaun] in the 2005–2007 time period." The court granted Shaun primary physical custody of the children because of Kalindi's interference with Shaun's custodial rights and because the factors pertaining to the children's best interests under AS 25.24.150(c) clearly weighed in favor of the children being in their father's custody. The court indicated that its custody modification "should be understood to be an interim order, effective from the date of the hearing until another hearing is conducted ... in the summer of 2008. If no hearing is requested, then the interim order will become permanent." (Emphasis omitted.)

Neither parent sought appellate review of the interim order.

### 2. 2008 motions, August 2008 hearing, and October 2008 order

In early 2008 Kalindi and Shaun each retained counsel. In May Shaun filed a motion seeking supervision of Kalindi's visitation with the children. Kalindi opposed the mo-

tion and filed a cross-motion asserting Shaun denied her visitation. The superior court held a hearing on August 22 and issued a written order on October 20, which the clerk distributed on November 3: Kalindi was granted continued unsupervised visitation contingent on her following certain conditions, and Shaun retained primary physical custody.

Neither parent moved to modify physical custody in 2008.[1] Neither parent sought appellate review of the October 2008 order.

### 3. October 2009 motion and May 2010 order

In October 2009 Kalindi filed a motion seeking to modify "interim" custody and visitation, to establish "final child custody orders," and to determine the rule of law regarding the effect of Shaun's prior domestic violence on the custody decision.[2] Kalindi sought sole legal and primary physical custody of the children and requested an evidentiary hearing.

In early 2010 the case was reassigned to Superior Court Judge Eric A. Aarseth. Kalindi again requested an evidentiary hearing on her motion. In May the superior court denied her motion without a hearing, stating that the August 2008 hearing had resulted in a "final order" and concluding that Kalindi was "barred by the doctrines of res judicata and collateral estoppel from attempting to re-litigate legal and factual matters that existed prior to the August 22, 2008 hearing," including "factual issues that were known or should have been known to" her at the hearing.

### 4. Appeal

Kalindi appeals pro se from the May 2010 order; we understand Kalindi's primary ar-

---

1. Kalindi asserts that she moved to modify custody at the August 2008 hearing, but this is not reflected in the record. At a June 2008 hearing Kalindi's attorney stated that he was planning to prepare a modification motion and asked how the court would respond and whether such a motion would affect the upcoming August visitation hearing. The court responded that it was up to the parties to decide whether to file motions, a modification motion would not affect the visitation hearing, and, if a modification motion were filed and a hearing warranted, the court would

likely have to schedule the hearing for the fall. This discussion did not constitute a motion to modify custody.

2. *See* AS 25.24.150(g): "There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."

gument to be that the superior court erred by denying her a custody modification hearing to present evidence of Shaun's history of domestic violence.[3]

Kalindi also presents arguments that the superior court erred in December 2007 by: (1) denying her due process by not giving her notice that custody was at issue at the December hearing; (2) modifying custody; and (3) finding that she "has a blatant disregard for the father." We decline to reach the merits of these arguments because Kalindi did not timely seek review of the December 2007 order. A party must appeal a "final judgment for custody of children" within 15 days of the clerk's distribution certificate.[4] The December 2007 order indicated that the court's interim custody modification would become permanent unless a hearing was requested in the summer of 2008. Kalindi did not seek interlocutory review of that order, and neither Kalindi nor Shaun requested a custody hearing to prevent the interim order from becoming final. After the August 2008 visitation hearing, the court issued a written order in October indicating that Kalindi would continue having unsupervised visitation and Shaun would retain primary physical custody. The clerk distributed that order in early November. Certainly by that point the December 2007 order had become a final judgment effectively ending the 2007 custody dispute. Kalindi did not appeal the October 2008 order, but instead filed a new motion in the superior court a year later in October 2009. That motion resulted in the May 2010 order. We limit our review to Kalindi's appeal from that order.

## III. STANDARD OF REVIEW

■ We review de novo "[w]hether a moving party has made out a prima facie showing sufficient to justify a custody modification hearing."[5] We will affirm the denial of a custody modification motion without a hearing if "the facts alleged, even if proved, cannot warrant modification, or if the allegations are so general or conclusory, and so convincingly refuted by competent evidence, as to create no genuine issue of a material fact requiring a hearing."[6]

## IV. DISCUSSION

Kalindi contends the superior court erred in denying her a custody modification hearing to present evidence of Shaun's domestic violence history. Kalindi further contends the court erred by denying her modification motion without considering whether AS 25.24.150(g)'s rebuttable presumption applied. Kalindi also asserts the court erred by ignoring: (1) evidence submitted at the December 2007 hearing; (2) new evidence that Shaun committed domestic violence between 2005 and 2007; and (3) new evidence that Shaun committed domestic violence after taking custody of the children in December 2007. These arguments bring to bear different and competing policy concerns regarding finality of judgments, child custody modification, and domestic violence as a factor in child custody determinations.

■ Res judicata, or claim preclusion, bars relitigation of a claim when there is "(1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action."[7] But AS 25.20.110 provides an exception to the general principle that final judgments should not be disturbed—it allows parents to seek modification of child custody based on a change of circumstances if modification is in the best interests of the child. A custody modification motion is not a new action, but rather a request to reopen the final judgment

---

**3.** *See Romero v. Cox*, 166 P.3d 4, 8 (Alaska 2007) ("[W]e judge a pro se litigant's [appellate] briefing by a less demanding standard." (internal quotation marks omitted)).

**4.** Alaska R.App. P. 218.

**5.** *Barile v. Barile*, 179 P.3d 944, 946 (Alaska 2008) (citing *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999)).

**6.** *Id.* (citing *Harrington*, 984 P.2d at 3).

**7.** *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010) (citing *Smith v. C.S.K. Auto, Inc.*, 132 P.3d 818, 820 (Alaska 2006)).

in the same case.[8] Consequently res judicata does not apply to custody modification motions, although the principle of finality does—parties should not be allowed to relitigate "in the hope of gaining a more favorable position."[9] Our cases demonstrate that the change in circumstances requirement for custody modification "is intended to discourage continual relitigation of custody decisions, a policy motivated by the judicial assumption that finality and certainty in custody matters are critical to the child's emotional welfare."[10]

Although a party moving for custody modification must generally demonstrate "a substantial change in circumstances since the last custody order was entered,"[11] we have relaxed this rule in custody matters involving domestic violence, directing the superior court to look back to events that occurred before the initial custody order if not adequately addressed at the initial custody determination or subsequent proceedings.[12] Taking prior domestic violence into consideration is particularly important in cases where a settlement agreement deciding custody was made by pro se parties with a history of domestic violence.[13]

In this case Shaun and Kalindi, proceeding pro se, entered into divorce-related custody settlement agreements in 2005 and 2006. The 1999 and 2004 instances of domestic violence by Shaun were not raised in these proceedings. Although the 1999 and 2004 incidents were mentioned at the December 2007 hearing, they were not sufficiently considered nor were relevant findings made at that time.[14] And because the August 2008 hearing involved only visitation motions, Kalindi was not required to raise all of her custody-related claims, even if she knew or should have known about them.[15]

**8.** *See Bunn v. House,* 934 P.2d 753, 757 n. 12 (Alaska 1997) (holding same in child support modification case).

**9.** *See id.* at 758.

**10.** *Peterson v. Swarthout,* 214 P.3d 332, 340–41 (Alaska 2009) (quoting *Gratrix v. Gratrix,* 652 P.2d 76, 82–83 (Alaska 1982)) (internal quotation marks omitted).

**11.** *Bagby v. Bagby,* 250 P.3d 1127, 1129 (Alaska 2011).

**12.** *See Williams v. Barbee,* 243 P.3d 995, 1002–03 (Alaska 2010) (holding in part that application of AS 25.24.150(g)'s rebuttable presumption was necessary in custody modification case where initial custody settlement agreement was made without addressing presumption and where parties had history of domestic violence during marriage); *Michele M. v. Richard R.,* 177 P.3d 830, 831, 835–38 (Alaska 2008) (holding in 2006 custody dispute between unmarried parties that it was plain error for superior court not to determine whether father's actions in previous relationship amounted to "history of perpetrating domestic violence" even though court had alluded to domestic violence in findings from 2001 custody trial); *see also Williams,* 243 P.3d at 1001 (noting purpose of rebuttable presumption is to protect children from "severe and long-lasting effects" of domestic violence and "to decrease the likelihood that children would be placed in the custodial household where domestic violence exists").

**13.** *See Williams,* 243 P.3d at 997, 1003 (noting application of AS 25.24.150(g)'s rebuttable presumption is "especially necessary" under such circumstances).

**14.** *See id.* at 1004 ("If pro se parties make allegations of domestic violence the superior court must inquire into the allegations and allow the parties to present evidence regarding the allegations."); *id.* ("We hold today that where a superior court finds that domestic violence occurred, it must make express findings regarding whether the incident or incidents of domestic violence constitute a 'history of perpetrating domestic violence' under AS 25.24.150(h)."); *Michele M.,* 177 P.3d at 837 (holding it was plain error for superior court not to make findings whether father's previous acts constituted history of domestic violence); *see also* AS 25.24.150(h) (defining "history of perpetrating domestic violence" for purposes of AS 25.24.150(g)'s rebuttable presumption).

**15.** We note that at a June 2008 hearing the superior court discussed the upcoming August visitation hearing, urging the parties to focus on issues in the supervised visitation motion and stressing that the hearing was "not going to turn into a hearing for all purposes."

We also note that such a requirement might put victims of domestic violence in a particularly difficult position because violence may be continuing, victims may "be afraid to confront [the] abuser in court, ... [and may] suffer from psychological effects such as post-traumatic disorder, anxiety, [and] depression." *See* Lisa Bolotin, Note, *When Parents Fight: Alaska's Presumption Against Awarding Custody to Perpetrators of Domestic Violence,* 25 ALASKA L.REV. 263, 269, 290 (2008) (citations omitted).

Taking the competing policy considerations into account, we conclude that res judicata does not bar Kalindi's 2009 motion to modify custody. Nor does the finality principle bar Kalindi from basing her 2009 motion on the 1999 and 2004 domestic violence incidents, any new claims of domestic violence occurring between 2005 and 2007, or claims of domestic violence occurring after the December 2007 hearing, because none of these undisputed or alleged incidents have been addressed by the superior court in its custody determinations. We also conclude that the 1999 and 2004 domestic violence incidents alone are sufficiently serious to provide a prima facie case for modification, and therefore a hearing is required.[16]

Kalindi, however, may be collaterally estopped from relitigating domestic violence allegations actually raised and adjudicated at the December 2007 hearing—"[c]ollateral estoppel, or issue preclusion, 'bars the relitigation of issues actually determined in [earlier] proceedings.'"[17] We require four elements before collateral estoppel may be applied: (1) the party against whom preclusion is sought was a party or privy to the first action; (2) the issue is identical to the issue previously decided; (3) a final judgment on the merits was issued; and (4) the determination of the issue was essential to the final judgment.[18] Those elements are present as to the 2005 to 2007 domestic violence allegations that were actually raised at the December 2007 hearing. We have noted that existence of those elements provides only the underlying basis for the trial court's exercise of discretion to apply or not apply collateral estoppel, and that "this discretion must be tempered by principles of fairness in light of the circumstances of each particular case."[19] For example, it may be unfair to apply collateral estoppel if the stakes in the first proceeding did not warrant a full and vigorous contest of the issue[20] or if the party against whom collateral estoppel is sought was otherwise precluded from fully and fairly contesting the issue.[21]

In its May 2010 order the superior court did not express any consideration of the fairness of applying collateral estoppel to the findings made in the December 2007 hearing and order, and the briefing before us does not adequately address the question. We therefore leave it to the superior court on remand to consider whether, under the facts of this case, applying collateral estoppel to the December 2007 findings regarding specific allegations of domestic violence in the 2005 to 2007 time frame would be fair to Kalindi.

## V.   CONCLUSION

We REMAND to the superior court for an evidentiary hearing consistent with this opinion on Kalindi's motion to modify custody.

STOWERS, Justice, not participating.

---

16. *See Barile,* 179 P.3d at 946–47.

17. *Latham v. Palin,* 251 P.3d 341, 344 (Alaska 2011) (quoting *Jeffries v. Glacier State Tel. Co.,* 604 P.2d 4, 8 n. 11 (Alaska 1979)).

18. *Id.* (citing *Midgett v. Cook Inlet Pre–Trial Facility,* 53 P.3d 1105, 1110 (Alaska 2002)).

19. *Misyura v. Misyura,* 242 P.3d 1037, 1040 (Alaska 2010).

20. *Sengupta v. Univ. of Alaska,* 21 P.3d 1240, 1250 n. 29 (Alaska 2001) (considering application of collateral estoppel to administrative findings and noting that difference in amount at stake in proceedings could affect incentive to litigate issue (citing RESTATEMENT (SECOND) OF JUDGMENTS § 28(5) (1982))).

21. *See, e.g., Johnson v. Alaska State Dep't of Fish & Game,* 836 P.2d 896, 908 & n. 17 (Alaska 1991) (considering application of collateral estoppel to administrative findings and noting that application requires fairness determination, which entails whether prior proceeding met essential elements of adjudication, including adequate notice and right to present and rebut evidence and argument (citing RESTATEMENT (SECOND) OF JUDGMENTS § 83(2) (1982))).