**HEATHER W., Appellant,**

v.

**RUDY R., Appellee.**

No. S–14332.

Supreme Court of Alaska.

April 20, 2012.

---

**32.** AS 25.24.160(a)(2)(E).

Kara A. Nyquist, Anchorage, for Appellant.

Maryann E. Foley, Law Office of Maryann E. Foley, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Rudy R. moved to modify the agreement through which he and Heather W. share 50–50 custody of their daughter. He argued that recent legal troubles and instability in Heather's life amount to changed circumstances that required modifying the custody agreement in the child's best interests. The superior court agreed. Heather now appeals, arguing that the evidence does not show that any of her changed circumstances affected her child. The superior court also found that it was in the child's best interests for Rudy to have primary physical custody. Heather argues this was an abuse of discre-

tion because the trial court considered impermissible character evidence, gave disproportionate weight to some factors while ignoring others, and refused to consider evidence of past domestic violence between the parties.

We conclude that the superior court did not abuse its discretion by finding changed circumstances and did not assign disproportionate weight to certain statutory best interest factors. But because the issue of domestic violence has never been adjudicated, we remand for an evidentiary hearing to determine whether Rudy has a history of domestic violence, and, if so, whether he has rebutted the statutory presumption against an award of custody.

## II.  FACTS AND PROCEEDINGS

### A.  Background Facts

Heather W. and Rudy R. have one daughter, born in May 2000. In September 2002 Heather and Rudy stipulated to a custody agreement whereby Heather had primary physical custody of their daughter. Shortly thereafter, when the child was two or three, the parties began an informal arrangement in which they shared physical custody week on-week off. In 2006 the parties formally stipulated to modifying their custody agreement to reflect the informal, alternate-week schedule they had been following.

### B.  Motion To Modify Custody

In July 2010 Rudy filed a motion to modify the parties' custody arrangement. Rudy argued that there had been "a material change of circumstances" that justified modifying the custody agreement and that it was now in his daughter's best interests that Rudy have primary physical custody. Rudy argued that several factors in Heather's life constituted a material change of circumstances that warranted modifying the custody agreement, including: Heather's criminal charges for driving under the influence and driving with a suspended license in November 2009 and for driving with a suspended license in April 2010; the revocation of Heather's license; the bad behavior of people close to Heather;

and the instability of Heather's living situation.

Heather opposed the requested modification. She argued that there had not been a material change in her circumstances and that even if Rudy's allegations were true, he had failed to show how those allegations affected the child.

The superior court held a custody modification hearing in February 2011. At the evidentiary hearing, the testimony concentrated largely on Heather's alleged shortcomings as a parent. Heather was questioned about the circumstances surrounding her DUI charge.[1] Throughout the hearing, Heather and others were questioned about her drinking, and Rudy suggested in closing that Heather had a drinking problem.

At the hearing, Rudy also emphasized two instances of concern between Heather and men with whom she was romantically involved. In one instance, immediately preceding her DUI charge, Heather and then-boyfriend Adam returned to Heather's house after several drinks when Adam began "destroying [Heather's] house." Heather testified that she was "absolutely terrified," and felt compelled to drive to a nearby gas station to call the police. In another incident in October 2008, police were called to the home Heather shared with then-boyfriend Charles. Charles was intoxicated and had a gun. Heather, who was also intoxicated, refused a police officer's commands to move away from Charles, and was eventually handcuffed, though not arrested.

Both Heather and the citing police officer testified about the charge for driving with a license suspended/revoked.[2] Heather claimed that she needed to drive her daughter to the emergency room because of a high fever, but the superior court found her story less than credible.

Heather also testified about her various residences during the preceding five years. In her affidavit she stated that she had lived in four residences, but Rudy presented evidence that Heather may have lived at anoth-

1.  Heather pleaded guilty to reckless driving.

2.  This case was ultimately dismissed.

er address and been untruthful about the dates of her various residences.

Throughout the hearing, Heather argued that her daughter was not affected by Heather's alleged conduct, pointing out that her daughter was not present during the DUI or the incidents involving Adam and Charles. Heather maintained that her lack of a driver's license had not affected her daughter's attendance in school or extracurricular activities. Heather argued that she had lived in her current address for over a year and that the child had a stable home life and good home.

Finally, Heather's credibility was at issue during the hearing. Rudy called two witnesses to support his contention that Heather had provided the court with two forged letters and suggested that someone had subsequently removed one of the letters from the court file. The superior court found that some of Heather's explanations for her behavior were less than convincing.

Following the three-day hearing, the superior court issued an order, supported by findings of fact and conclusions of law, awarding primary physical custody to Rudy. Heather filed a motion for reconsideration, which was denied, and she now appeals.

## III. STANDARD OF REVIEW

"Whether the superior court applied the correct legal standard is a question of law that we review de novo, 'adopting the rule of law that is most persuasive in light of precedent, reason, and policy.' Trial courts have broad discretion in determining whether a proposed child-custody modification is in the child's best interests." [3] We will reverse a trial court only when that court has "abused its discretion or when its controlling findings of fact were clearly erroneous." [4] "An abuse of discretion ... occurr[s] if the superior court considers improper factors in

making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others." [5] "In the context of a custody modification decree, this analysis must be applied to assess whether the superior court was justified in changing the previous custody determination." [6] "Factual findings are clearly erroneous if, on the basis of the entire record, we are 'left with a definite and firm conviction ... that a mistake has been made, even though there may be evidence to support the finding.' " [7]

## IV. DISCUSSION

Alaska Statute 25.20.110(a) provides that "[a]n award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child." Heather makes two sets of arguments, the first of which claim that the trial court erred in finding a material change in circumstances, and the second of which claim that the trial court abused its discretion in applying the statutory best interests of the child factors. We address these arguments in turn.

### A. The Superior Court Did Not Abuse Its Discretion In Finding A Material Change Of Circumstances.

As a threshold matter, a party seeking a modification of custody must make a prima facie showing that a substantial change in circumstances has occurred.[8] "The required change in circumstance must be significant or substantial, and must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to

3. *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (quoting *McQuade v. McQuade*, 901 P.2d 421, 423 n. 3 (Alaska 1995)).

4. *McLane v. Paul*, 189 P.3d 1039, 1042 (Alaska 2008).

5. *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997).

6. *Gratrix v. Gratrix*, 652 P.2d 76, 80 (Alaska 1982).

7. *Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001) (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

8. *See id.* at 6.

modify."[9] Further, to be material, a change in circumstances must "affect[ ] the children's welfare."[10] We require a movant to clear this threshold in order "to maintain continuity of care and to avoid disturbing and upsetting the child with repeated custody changes."[11] We have expressed concern that "[c]hildren ... not be shuttled back and forth between ... parents unless there are important circumstances justifying such change as in their best interests and welfare."[12]

The superior court found a substantial change in circumstances, concluding:

> The things that constitute a change of circumstances are [Heather's] DUI case which was pled out, the restrictions on her driver's license, there is the stability issue, including at least two incidents of potential domestic violence in [Heather's] relationships, and the deterioration in the parents' relationship.[13]

Heather argues that the superior court erred in finding a material change in circumstances. Her argument presents a mixed question of fact and law: She argues that a change in circumstances can only be found material if the change affects the child and that the superior court erred because Rudy did not demonstrate a nexus between his allegations against Heather and any effect on the child. Rudy responds that "[t]here is no ... Alaska case law that prohibits a trial court from finding that a series of events can constitute a substantial change of circumstance."

Rudy is correct. When reviewing whether a trial court was justified in finding a change in circumstances, we do not parse each alleged factual assertion of change, but instead look to see whether the circumstances in the aggregate establish a change of circumstances.[14] The superior court certainly did not abuse its discretion in taking into account all of the circumstances raised in this case in concluding that there had been a substantial change of circumstances. Heather's DUI arrest, subsequent arrest for driving with a suspended license, and conduct with her boyfriends—one of which involved domestic violence and another of which involved a gun—demonstrate a pattern of conduct that presents a substantial change of circumstances.

Although Heather argues that none of these events were shown to affect her daughter because her daughter was not present to witness them, the superior court characterized this argument as "way too narrow." The superior court was well within its broad discretion to find that such bad behavior was a substantial change of circumstances affecting the child.[15]

## B. The Superior Court Did Not Err In Its Analysis And Application Of The Best Interest Factors.

Once the trial court has found a substantial change in circumstances justifying custody modification, it must then determine whether modification of the arrangement is in the best interests of the child.[16] In making a determination as to best interests, a court is required to consider the statu-

9. *Jenkins*, 10 P.3d at 589 (internal citations omitted).

10. *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999).

11. *McLane v. Paul*, 189 P.3d 1039, 1043 (Alaska 2008).

12. *Nichols v. Nichols*, 516 P.2d 732, 735 (Alaska 1973).

13. In the court's oral findings of fact from which the written findings are adapted, the court calls the DUI charge the "[m]ost obvious" change of circumstances.

14. *See Nichols v. Mandelin*, 790 P.2d 1367, 1372 (Alaska 1990) (concluding that "in the aggregate, [several indicia of a mother's overall maturation] constitute a substantial change in circumstances").

15. As we have noted before, "[a] child need not see domestic violence in order to be exposed to it." *Iverson v. Griffith*, Mem. Op. & J. No. 1260, 2006 WL 2578692, *4 n. 11 (Alaska, Sept. 6, 2006) (quoting Rachel L. Melissa, Note, *Oregon's Response to the Impact of Domestic Violence on Children*, 82 OR. L. REV. 1125, 1128–29 (2003)). Here, Heather did not take action to remove herself and her child from the potentially harmful environments.

16. AS 25.20.110(a).

tory factors enumerated in AS 25.24.150(c) [17] and, if there is a history of domestic violence by a parent, to apply the presumption under AS 25.24.150(g).[18]

Heather argues that the trial court abused its discretion in three separate ways in applying the statutory factors. First, Heather argues that the court impermissibly relied on evidence of her lifestyle that did not affect her daughter. Second, she argues that the trial court assigned disproportionate weight to certain factors while ignoring others. Finally, she argues that the court failed to take into consideration Rudy's history of domestic violence.

### 1. The superior court did not impermissibly consider evidence of Heather's character unrelated to her daughter's welfare.

As Heather points out, "[a] parent's lifestyle, habits or character is only relevant as it may be shown to negatively affect the child or the [parent's] parenting ability." [19] Heather argues that the superior court impermissibly relied on evidence of her "lifestyle, habits, or character" by focusing on her DUI charge, license restrictions, frequent moving, and relationship troubles, particularly without any direct evidence that these adversely impacted her daughter.

Rudy responds that Heather's behavior is covered under numerous statutory factors. The DUI charge, he argues, and the fact that Heather was intoxicated when the police were called on the incidents involving Adam and Charles, goes to substance abuse, one of the statutory factors. He argues that the frequent moves can properly be considered under the stability factor. Finally, he argues that Heather's "relationships with violence" involving Adam and Charles could properly be considered under the domestic violence factor.

In *Craig v. McBride*, we concluded that residential stability was a proper consideration in the best interest analysis.[20] It was therefore not an abuse of discretion for the superior court to consider this evidence.

Similarly, the superior court pointed to Heather's relationship history as evidence of instability. The court said it had "concerns regarding [Heather's] relationship with [Charles]. Her relationship with [Adam] is unclear. The court has concerns about both geographic and emotional stability." But because a parent's history of relationships marked by violence speaks to the statutory factor of "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continui-

17. AS 25.24.150(c) provides:
   In determining the best interests of the child the court shall consider
   (1) the physical, emotional, mental, religious, and social needs of the child;
   (2) the capability and desire of each parent to meet these needs;
   (3) the child's preference if the child is of sufficient age and capacity to form a preference;
   (4) the love and affection existing between the child and each parent;
   (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
   (6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;
   (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
   (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
   (9) other factors that the court considers pertinent.

18. AS 25.24.150(g) provides:
   There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.

19. *See Bonjour v. Bonjour*, 566 P.2d 667, 668–69 (Alaska 1977).

20. 639 P.2d 303, 305 (Alaska 1982).

ty,"[21] the superior court did not abuse its discretion in considering this evidence.

Further, the court's reference to Heather's relationship history was only mentioned in passing under the stability factor. The superior court addressed Heather's questionable decision-making with her boyfriends in more detail in addressing her capability of meeting the needs of her child. The court found that Heather's having continued living with Charles after he was arrested for drunkenly waiving a gun and her return to a house where Adam was having a violent outburst (and potentially her resumption of a relationship with Adam) were evidence of her poor judgment that suggested a potential inability to meet her daughter's needs, a statutory factor under the best interest analysis. Heather makes no argument that this reliance was impermissible or erroneous, and it appears the superior court properly considered Heather's relationship history as it related to her daughter.

### 2. The superior court did not assign disproportionate weight to certain factors.

Heather also argues that the superior court abused its discretion by giving insufficient weight to certain factors, while focusing too heavily on others.

First, she argues that the trial court failed to properly consider her capability and desire to meet her daughter's needs. To support her argument, she points to evidence that she was involved in her daughter's schooling, that she met her daughter's basic needs, and that she successfully co-parented with Rudy. But the superior court emphasized that due to Heather's lack of credible testimony as to what was going on in her life, it did not really have a good idea of Heather's capability in meeting her child's needs. Further, the trial court noted that Heather's choice to continue to live with Charles after the gun incident, as well as her actions on the night of her charge for driving with a suspended license, raised concerns about her judgment as a parent. In short, the trial court did not, as Heather argues, give insufficient weight to this statutory factor; the court simply disagreed with

Heather as to how well she met it. Trial courts are given broad deference to make these determinations, and here the trial court did not abuse that discretion.

Heather also argues that the trial court abused its discretion by failing to give sufficient weight to the bond between her and her daughter. The trial court only briefly addressed this factor, but it did say that there was "love and affection" between the child and both of her parents, suggesting that the factor did not cut toward one parent or another. This issue was not in dispute during the trial. A trial court acts within its discretion when it summarily deals with a factor that is not in dispute and that does not favor one parent over the other.

Heather also argues that the trial court abused its discretion by giving insufficient weight to the importance of maintaining continuity. A modification decision effectively takes this factor into consideration with its threshold question whether circumstances were changed sufficiently to warrant modification. Because the superior court did not abuse its discretion in finding a substantial change of circumstances, there is no basis for concluding that it abused its discretion in finding that instability in Heather's life weighed in favor of awarding custody to Rudy, despite the fact that it represented a change in the status quo.

Finally, Heather argues that the superior court gave undue weight to considerations of Heather's credibility. The court emphasized what it believed to be Heather's lack of credibility. In its written findings of fact, the superior court found that "[t]he real issue in this case is that it is very difficult ... to gauge exactly what is going on in [Heather's] life. The court has concerns about [Heather's] credibility.... The court can't believe what [Heather] is saying...." Heather argues that this emphasis on her credibility was improper because "[a] parent's character is only relevant as it may be shown to negatively affect the child or the mother's parenting ability." But the superior court did not frame the credibility issue as a character flaw that weighed against granting Heather

---

**21.** AS 25.24.150(c)(5).

custody. In fact, the superior court expressly declined Rudy's invitation to address Heather's credibility as a separate factor, saying, "I don't take away children because I think parents have lied on the stand. Never have done that. Never will." Instead, the superior court focused on how Heather's lack of credibility made it difficult for the court to evaluate what was actually going on in her life and raised concerns about her judgment as a parent. The court observed that Heather's lack of credibility left "a vacuum of information" for the court to determine Heather's capability in meeting her daughter's needs, while the evidence showed that Rudy "appear[ed] to have a very stable life." The court also noted that Heather's lack of credibility "call[ed] into question [her] judgment as a parent." This is not the sort of irrelevant character evidence we have previously deemed improper for the trial court to consider.[22]

### 3. Failing to consider domestic violence and the statutory presumption was an abuse of discretion.

■ Heather finally argues that the superior court erred by failing to consider Rudy's history of domestic violence. Heather argues both that the superior court failed to consider Rudy's history of domestic violence in the best interest analysis as required by AS 25.24.150(c)(7) and that the superior court failed to apply the presumption against awarding custody to a parent with a history of domestic violence as required by AS 25.24.150(g). Rudy responds that he has presented evidence sufficient to overcome this rebuttable presumption. Rudy also seems to suggest that Heather had no subjective or objective concerns about continued domestic violence when she entered the stipulated custody agreement and that thus Rudy's history is now irrelevant to the issue of custody.

Sometime in 2001, while they were still together, Rudy was convicted of assaulting Heather. Heather testified that this domestic violence was the reason she initially took physical custody of her daughter and that it was only after Rudy had completed "anger management" that the two began the informal arrangement that they formalized with the 2006 modification stipulation. Rudy testified that he completed a six-month domestic violence intervention at the Men's Center for Change in Cordova, but it appears that no court has made a finding as to (1) whether Rudy has a history of domestic violence as defined by AS 25.24.150(h), or (2) whether Rudy's completion of this program satisfied his burden of overcoming the presumption under AS 25.24.150(h).[23] Both the original 2002 custody order and the 2006 custody modification were entered by stipulation.

At the most recent trial, the parties' first contested custody proceeding, the superior court refused to consider Rudy's domestic violence. When Heather's attorney questioned Rudy about the domestic violence incident, the trial court indicated that it would not consider evidence of an assault that occurred before the parties' 2006 custody modification and that collateral estoppel applied to Heather's claim of assault. In its written findings of fact, the court noted that Heather had asked the court to consider the episode of domestic violence perpetrated by Rudy, but that "[t]here ha[ve] been no further episodes or threats of violence between the parents since the 2001 episode." In its oral findings, the court elaborated a bit, saying

**22.** See Craig v. McBride, 639 P.2d 303, 305 (Alaska 1982) (concluding that the trial court's references to a mother having borne a child out of wedlock impermissibly affected custody decision); Bonjour v. Bonjour, 566 P.2d 667 (Alaska 1977) (concluding that the trial court had impermissibly relied on a mother's cohabitation in determining the child's best interests).

**23.** AS 25.24.150(h) provides:
A parent has a history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence. The presumption may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent. . . .

"[t]his event occurred well before the parents' agreement to share custody in 2006."

We addressed a very similar situation in *McAlpine v. Pacarro*.[24] In that case, the father had assaulted the mother, and the parties had entered into a stipulated custody agreement granting the mother primary legal custody. The parties subsequently modified that custody arrangement, though the mother retained physical custody.[25] The father later moved for a modification of custody and was granted primary physical custody.[26] In 2009, ten years after the initial assault, the mother petitioned for a modification of custody and asked the trial court to determine the legal effect of the father's previous assault.[27] The trial court refused to hear evidence of domestic violence on the ground that anything that had happened prior to the most recent custody order was barred by collateral estoppel and res judicata.[28] We concluded that collateral estoppel did not bar a consideration of evidence of previous domestic violence in a custody case where the issue was "not adequately addressed at the initial custody determination or subsequent proceedings." [29] In this case, it does not appear that evidence of Rudy's domestic violence has ever been heard in a custody proceeding, and thus the superior court erred in refusing to consider evidence of domestic violence.[30]

Accordingly, we remand this case to the superior court for an evidentiary hearing solely on the issues whether Rudy has a history of domestic violence under AS 25.24.150(g), and, if so, whether Rudy has successfully rebutted the presumption of AS 25.24.150(h).

## V. CONCLUSION

For the foregoing reasons, we conclude that the superior court did not abuse its discretion by finding a substantial change of circumstances, did not rely on improper character evidence, and did not assign disproportionate weight to the statutory best interest factors. Because the superior court failed to consider evidence of past domestic violence, we REMAND for an evidentiary hearing to consider whether Rudy has a history of domestic violence and, if so, whether he has rebutted the presumption against awarding custody to a parent with a history of domestic violence.

---

24. 262 P.3d 622 (Alaska 2011).

25. *Id.* at 623.

26. *Id.* at 624.

27. *Id.*

28. *Id.*

29. *Id.* at 626.

30. In his brief, Rudy says that *"McAlpine* is distinguishable" because the mother proceeded pro se, while Heather has had counsel throughout her custody proceedings. Although in *McAlpine* we emphasized that "[t]aking prior domestic violence into consideration is particularly important in cases where a settlement agreement deciding custody was made by pro se parties with a history of domestic violence," this does not mean that the rule from *McAlpine* applies only when one or both parties are pro se. *Id.* at 626.