NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JESSICA P., | ) | |
| | ) | Supreme Court No. S-17688 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-16-10338 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| GARY P., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1823 – March 17, 2021 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Jessica P., pro se, Anchorage, Appellant. Gary P., pro se, Anchorage, Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

## I. INTRODUCTION

Jessica and Gary P. divorced in 2017. Jessica was awarded primary physical custody of their son, and the parties shared joint legal custody. The superior court later modified custody, granting primary physical and sole legal custody to Gary after finding that Jessica had physically assaulted their son. Roughly a year later, Jessica filed a motion to modify custody, which the court considered at a hearing in December 2019. The court then modified custody by changing Jessica's visitation privileges from

---

\* Entered under Alaska Appellate Rule 214.

supervised to unsupervised but maintaining Gary's sole legal and primary physical custody. Jessica, representing herself, appeals this order.

Jessica's brief asserts dozens of errors and improprieties throughout the proceedings. Many of these arguments are conclusory and inadequately developed, even by the more lenient standard applied to self-represented litigants, and are therefore waived.[1] Because the arguments that are sufficiently developed are not supported by the record, we affirm the superior court's order modifying custody.

## II.   FACTS AND PROCEEDINGS

Gary and Jessica married in Tennessee in 2004. Their son Simon[2] was born in 2006. Gary and Jessica permanently separated in October 2015. Jessica soon after moved to Alaska with Simon. Gary followed roughly a year and a half later.

### A.   Initial Custody Order

Jessica filed for divorce in November 2016. She alleged in an interim custody motion that Gary had physically abused her. She also mentioned domestic violence at an early status hearing, but the court emphasized that it was not accepting evidence at that time. The parties eventually agreed to a custody order that granted primary physical custody to Jessica and joint legal custody to both parties. The order did not address domestic violence. The parties' divorce was finalized in September 2017.

### B.   Restraining Orders Between Gary And Jessica

In late 2017 Gary and Jessica each requested a long-term domestic violence protective order against the other. At a hearing the court granted Gary's request based

---

[1]      *Antenor v. State, Dep't of Corr.*, 462 P.3d 1, 14 (Alaska 2020) ("But even self-represented litigants must provide more than a cursory statement to be considered on appeal.").

[2]      A pseudonym has been used to protect the child's privacy.

primarily on a series of obscene texts that Jessica had sent to Gary. Jessica withdrew her request at the hearing.

## C.  November 2018 Custody Order

In July 2018 Gary filed a petition for a domestic violence protective order against Jessica on Simon's behalf. The petition described a scuffle at a doctor's office involving Jessica, Simon, and Sarah (Gary's then-girlfriend, now-wife). Gary's petition alleged that Jessica acted aggressively and inappropriately, including grabbing Simon's arm hard enough to leave a bruise and attempting to drag him away. Gary later requested sole legal and primary physical custody of Simon, based in part on the alleged incident at the doctor's office.

After a series of hearings at which Jessica was represented by counsel, the court found by a preponderance of the evidence that Jessica had committed assault in the fourth degree against Simon. It therefore granted Simon's protective order against Jessica. In the custody case, the court found that there had been a substantial change in circumstances and granted primary physical and sole legal custody to Gary.

## D.  December 2019 Custody Order

Jessica moved to modify custody in April 2019. In June she filed 60 exhibits with the court, including texts, emails, and recordings; it is unclear from the record which exhibits were ultimately admitted. One exhibit was a protective order against Gary issued by a Tennessee court in 2015. Jessica also filed an affidavit in July 2019 that included allegations of domestic violence against Gary. The court denied Jessica's motion at a hearing in August 2019, finding there had not been a substantial change in circumstances.

Less than a month later, Jessica again moved to modify custody. Before scheduling a hearing on the motion, the court ordered Jessica to list the specific circumstances that had changed since the most recent hearing. Jessica responded with

an affidavit that made a wide variety of allegations against Gary, including allegations of domestic violence. The court held a hearing on the motion to modify in December 2019. It received testimony from Jessica, Jessica's mother, and Gary, then announced its ruling on the record. It found that the recent expiration of Simon's long-term domestic violence protective order was a substantial change in circumstances, which — combined with Jessica's completion of court-ordered parenting classes — made it appropriate for Jessica to have unsupervised visits with Simon. The court then made findings on each of the best-interests factors for custody under AS 25.24.150(c) and concluded that maintaining Gary's sole legal and primary physical custody was in Simon's best interests.

Jessica moved for reconsideration, which the court denied. Jessica now appeals.

## III. DISCUSSION

### A. There Is No Evidence The Superior Court Was Biased Against Jessica.

Jessica claims that the superior court displayed bias by ignoring evidence against Gary and believing claims against Jessica despite little or no evidence. Jessica's claim of bias has no support in the record.

In *Greenway v. Heathcott* we wrote that "[i]t is not obvious what standard of review applies to an appellate claim that a trial court was biased, if the trial court had no opportunity — such as by motion for recusal, disqualification, or new trial — to resolve a claim of judicial bias."[3] Here, as there, "the choice" between abuse of discretion and de novo review "is irrelevant,"[4] because there was neither bias nor the appearance of bias under either standard.

---

[3] 294 P.3d 1056, 1062 (Alaska 2013).

[4] *Id.* at 1063.

To show judicial bias, "the claimant must show that the judge formed an opinion of her from extrajudicial sources, resulting in an opinion other than on the merits."[5] Jessica argues that the judge was biased in Gary's favor because she previously presided over two divorce cases in which Sarah was a party. Jessica's argument appears to be that the judge was biased toward finding that Jessica, and not Sarah, had assaulted Simon during the July 2018 incident because finding otherwise would have revealed that the judge's domestic violence findings in Sarah's previous custody cases were incorrect.

Jessica's argument is unconvincing. It is not true, as Jessica suggests, that the judge was forced to find that either Jessica or Sarah assaulted Simon. Nor would it be contradictory or embarrassing for the judge to find that Sarah committed domestic violence in one situation but not another. More generally, neither Alaska's judicial disqualification statute[6] nor the canons of judicial conduct[7] require a judge's recusal from a matter simply because a party — or in this case the wife of a party — was also a party in a previous unrelated matter before the judge.

Although Jessica's bias argument is not entirely clear, she may also be arguing that the court proceedings themselves, including the evidence presented and Jessica's own conduct during these proceedings, caused the judge to become biased against her. But a judge's opinion of a party as a result of events observed during court proceedings is not sufficient to prove bias,[8] even if the judge expressed a negative

---

[5]    *Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011).

[6]    AS 22.20.020.

[7]    Alaska Code Jud. Conduct Canon 3.E.

[8]    *Johnson v. Johnson*, 394 P.3d 598, 604 (Alaska 2017).

opinion about a litigant on the basis of evidence presented.[9]  It is true that judicial bias may exist where "a judicial officer hears, learns, or does something intrajudicially so prejudicial that further participation would be unfair."[10]  Here, however, Jessica does not point to anything significant the court did during the proceedings aside from ruling against her.[11]  Although Jessica suggests that the judge conspired or colluded with Gary and Sarah, there is no evidence in the record suggesting this is true.  Rather, as described below, the court's factual findings are supported by the record, and any rulings against Jessica were the result of opinions and attitudes the judge formed in court as a result of the evidence.[12]

## B.     Jessica's Assertion Of Ineffective Assistance Of Counsel Fails.

Jessica was represented by counsel in this matter from August 13, 2018 to March 1, 2019.  She argues on appeal that her attorneys failed to zealously advocate for her.  We have never recognized a right to effective assistance of retained counsel in civil

---

[9]     *Israel v. State, Dep't of Corr.*, 460 P.3d 777, 786 (Alaska 2020).

[10]     *Downs v. Downs*, 440 P.3d 294, 300 (Alaska 2019) (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part)).

[11]     Jessica asserts that the court acted improperly by "telling [Gary] to hand her his packet of evidence and she would pick the documents she wanted."  But a judge does not act improperly by facilitating the presentation of exhibits by self-represented litigants.  Standing alone, this assertion does not describe conduct so prejudicial as to suggest bias.

[12]     See *Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011) ("Merely making decisions that a plaintiff considers unfavorable is not bias . . . .  Forming an opinion from available evidence does not constitute personal bias.").

proceedings,[13] and Jessica demonstrates no reason to do so here. Her counsel's performance is therefore no basis to overturn the custody order on appeal.

C. **The Superior Court Did Not Rely On Testimony Jessica Claims Is False.**

Jessica alleges that an Office of Children's Services (OCS) social worker provided false testimony to the court at an August 2018 custody hearing. At that hearing, the court heard testimony from an OCS employee who had interviewed Simon about the July 2018 scuffle. Relying in part on this testimony, the court granted Simon's protective order against Jessica and awarded primary physical and sole legal custody to Gary in November 2018. Jessica did not appeal either order.

Jessica now appeals the superior court's December 2019 custody order. Because there is no indication that the court relied on the 2018 testimony from the OCS worker when crafting the December 2019 order, we do not consider whether the testimony was false.

D. **The Superior Court Did Not Err In Its Handling Of Domestic Violence Allegations.**

Jessica and Gary have accused one another of domestic violence throughout this long-running custody dispute. Despite these recurring allegations, the superior court has made only one finding of domestic violence in this case: that Jessica assaulted Simon in July 2018.[14] When Jessica filed this latest motion to modify custody, she again accused Gary of past acts of domestic violence against her. She now argues that the

---

[13] *Zok v. State*, 903 P.2d 574, 576 n.2 (Alaska 1995) ("[W]e have never recognized a right to effective assistance of retained counsel in civil proceedings.").

[14] Jessica and Gary also initiated separate domestic violence protective order proceedings against each other in late 2017. The court granted Gary's request after finding that Jessica had harassed Gary. But that finding was in a separate case between the parties.

superior court erred by not comparing the parties' histories of domestic violence in making its custody decision. We disagree. The superior court properly invited Jessica to testify about incidents of domestic violence, but Jessica offered scant testimony in response. Given the dearth of testimony, the superior court did not err in making no findings about past acts of domestic violence.

Typically, a party may not seek to modify a custody order based on events that took place before that order was issued, even if those events were not previously brought to the court's attention. The "principle of finality" applies to custody cases, and parties are not allowed to relitigate custody orders "in the hope of gaining a more favorable position."[15] For that reason, a party "must generally demonstrate 'a substantial change in circumstances since the last custody order was entered' " before the court may modify that order.[16]

But "we have relaxed this rule in custody matters involving domestic violence, directing the superior court to look back to events that occurred before the initial custody order if not adequately addressed at the initial custody determination or subsequent proceedings."[17] Looking back "is particularly important in cases where a settlement agreement deciding custody was made by [self-represented] parties with a history of domestic violence."[18] So when a self-represented litigant in a custody matter alleges acts of domestic violence predating the most recent custody order, "the superior

---

[15]    *McAlpine v. Pacarro*, 262 P.3d 622, 626 (Alaska 2011) (quoting *Bunn v. House*, 934 P.2d 753, 758 (Alaska 1997)).

[16]    *Id*. (quoting *Bagby v. Bagby*, 250 P.3d 1127, 1129 (Alaska 2011)).

[17]    *Id*.

[18]    *Id*.

court must inquire into the allegations and allow the parties to present evidence"[19] about them unless these allegations have already been "adequately addressed."[20] If the allegations are proven, they may amount to a substantial change in circumstances warranting custody modification even if they took place before the most recent custody order.[21]

Jessica triggered the superior court's obligation to inquire about past incidents of domestic violence when she moved to modify custody in September 2019. Upon receiving Jessica's motion, filed less than a month after the most recent custody modification hearing, the superior court ordered Jessica to list the specific circumstances that she believed had changed since that hearing. In response, Jessica filed an affidavit stating that Gary "has repeatedly physically and mentally abused me" and accusing Gary of hitting her in the mouth when they were both living together with Simon.

The superior court was required to entertain Jessica's allegations of Gary's past abuse because they had never been conclusively resolved.[22] For example, Jessica's original divorce papers accused Gary of physical abuse, but she and Gary (each self-represented) entered into a settlement agreement that did not mention domestic

---

[19] *Williams v. Barbee*, 243 P.3d 995, 1005 (Alaska 2010).

[20] *McAlpine*, 262 P.3d at 626.

[21] *See id.* at 627 (concluding that alleged domestic violence incidents from 1999 and 2004 were "sufficiently serious to provide a prima facie case for modification" of custody order issued in 2007).

[22] *See id.* (holding it was error for superior court to decline to address allegations of past domestic violence incidents "because none of these undisputed or alleged incidents have been addressed by the superior court in its custody determinations").

violence.[23]  She later applied for a domestic violence protective order against Gary, alleging he had hit her in the mouth, but then withdrew the application.  At the November 2018 custody hearing when the court found that Jessica had assaulted Simon, it expressly declined to make findings about any other instances of domestic violence between the parties because it lacked evidence to do so.  And before the July 2019 custody modification hearing, Jessica filed a lengthy affidavit accusing Gary of violent acts while they were living in Tennessee; she also filed a copy of a protective order against Gary from a Tennessee court.  Without specifically addressing these allegations, the superior court ruled that Jessica had not shown a change in circumstances and denied her motion to modify custody.[24]  Because Jessica's allegations of domestic violence by Gary were never actually litigated, Jessica had the right to present them again for the court's consideration.

The superior court satisfied its obligation to inquire about Jessica's allegations of past abuse at the December 2019 modification hearing.  Methodically proceeding through the best-interests factors, the judge invited Jessica to testify about "any evidence of domestic violence, child abuse or child neglect in the proposed

---

[23]     At a status hearing before the agreement was reached, Jessica attempted to describe an incident of domestic violence, but the court emphasized that it would not accept evidence at a status hearing.

[24]     To be clear, the only order on appeal is the custody modification order of December 5, 2019.  An order modifying custody is a final order; a party must timely appeal it or lose the right to appellate review.  *See McAlpine*, 262 P.3d at 625 (declining to review prior custody orders that had not been appealed within time allotted by Alaska Rule of Appellate Procedure 218 and instead limiting review to most recent custody order that had been timely appealed).  Jessica did not timely appeal previous custody modification orders in this case, so we do not address whether the superior court may have erred in handling domestic violence allegations in those prior orders.  We focus solely on the December 2019 order.

custodial household, or a history of violence between the parents." In response, Jessica testified that Gary "has always punched walls" and "we'd go tit for tat for that" and mentioned "trying to break the cycle, especially after [Gary] left," but did not offer any other details about violent acts. The superior court then asked Jessica whether she was aware of any incidents of domestic violence in either party's household since the last hearing. Jessica was not. Finally, the superior court inquired whether there was "[a]nything else that you want to say on that factor." Jessica declined. The court did not ask Jessica about the specific allegations in her affidavit. But having invited Jessica to testify about the "history of domestic violence between the parties" and having given her an additional chance to say what she wanted about the issue, the court did not commit error by not affirmatively directing Jessica's testimony toward specific incidents that Jessica herself did not bring up at the hearing.[25] This exchange satisfied the superior court's obligation to inquire into Jessica's allegations of domestic violence. And given the limited testimony on this issue, it was not error for the superior court to make no specific findings about domestic violence in ruling on Jessica's motion to modify custody.

E.      **The Superior Court Did Not Abuse Its Discretion In Granting Gary Sole Legal And Primary Physical Custody Of Simon.**

Before making its custody determination, the superior court made findings on each of the best-interests factors under AS 25.24.150(c). It found that Gary was better

---

[25]      This case is unlike *Williams v. Barbee*, 243 P.3d 995 (Alaska 2010), in which Williams's pleadings alleged domestic abuse but the superior court neither asked her to provide additional detail about those events nor gave her a clear opportunity to do so. *Id*. at 1005 & n.49 ("While the superior court did not expressly bar Williams from testifying about her allegations, it is unclear when during the hearing Williams would have had an opportunity to do so."). The superior court here gave Jessica a clear opportunity to testify about her allegations of past abuse.

able than Jessica to meet Simon's needs, particularly his mental health needs; that Jessica's fear of stalkers indicated that Jessica's home environment was not stable; and that Jessica was interfering in Simon's relationship with Gary.  It concluded that it was in Simon's best interest for Gary's sole legal and primary physical custody to continue but ordered that Jessica's visits, which at that time were supervised, could be unsupervised.  The court's factual findings are not clearly erroneous, nor did the court abuse its discretion in relying on these factors to maintain Gary's custody.

### 1.    The superior court's factual findings are not clearly erroneous.

#### a.    The superior court did not clearly err by finding that Jessica was interfering in Simon's relationship with his father.

When deciding custody the superior court must consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[26]  We disagree with Jessica's argument that the superior court clearly erred in finding that Jessica interfered with Simon and Gary's relationship.[27]

The court found that text messages between Jessica and Simon showed that Jessica had negatively interfered in Simon and Gary's relationship.  Numerous text messages between Jessica and Simon have been filed with the court throughout this litigation.  These texts show that Jessica extensively questioned and coached Simon about the July 2018 incident.  They also show that Jessica told Simon that Gary "said you felt I was a danger to you.  That hurts"; told Simon that Gary "needs to repair this relationship with me and you"; and, when Gary and Sarah planned to homeschool

---

[26]    AS 25.24.150(c)(6).

[27]    We review findings of fact for clear error. *Geldermann v. Geldermann*, 428 P.3d 477, 481 (Alaska 2018).

Simon, told Simon that "[y]ou cannot be taught by that woman." The superior court did not clearly err in finding that these texts showed that Jessica failed to encourage a close and continuing relationship between Gary and Simon.

### b. The superior court did not clearly err by finding that Gary is providing Simon with mental health care.

The superior court must also consider the child's needs and the ability of each parent to meet those needs. Here, the superior court found that Gary "has been taking [Simon] to his appointments" and "has been making sure that [Simon] has a relationship with a therapist" as well as a psychiatrist. Jessica claims that Gary and Sarah deliberately move Simon to a new therapist whenever Simon's therapy sessions threaten to "expos[e]" their wrongdoing. She also alleges that Sarah endangered Simon's access to therapy by assaulting therapeutic staff. Because the record indicates that Simon is receiving mental health care while in Gary's custody, the superior court did not clearly err in finding that Gary is providing Simon with access to the care he needs.

The record shows that Gary has been ensuring Simon's continuing relationship with a therapist and psychiatrist. Simon saw a therapist 13 times between October 2018 and July 2019 and a psychiatrist 12 times between May and October 2019. Gary indicated at prior hearings that after Simon stopped seeing his former therapist in the summer of 2019, he began seeing a fill-in therapist. And at the December 5 hearing Gary testified that Simon would be meeting his new permanent therapist on December 9. Throughout this time Simon also had been seeing the same psychiatrist. Records do show that Sarah may have had an argument with one of Simon's therapy providers. But this alleged incident is not enough to establish that Gary has undermined Simon's access to mental health care. The superior court did not clearly err when it found that Gary has been ensuring that Simon "has a relationship with a therapist with a continuing psychiatric relationship."

**c. The superior court did not clearly err by failing to find that Gary was stalking Jessica or by finding that Jessica's fears of stalking undermine her ability to provide a stable environment.**

Jessica claims that the court granted custody to Gary for an improper reason: that Gary and his friends' stalking made Jessica's home an unsafe environment. But the court did not find that Gary or his friends were stalking Jessica; the court found it "is unclear . . . who . . . may be doing that." Rather, after finding that Gary's home was a "stable, satisfactory environment" for Simon,[28] it found that Jessica and her mother's fear of stalking "does not indicate that that environment would be particularly stable or satisfactory for [Simon], at this time."

Although the superior court heard extensive testimony from Jessica and her mother suggesting they were being stalked and that Gary was behind it, the superior court did not clearly err in finding it was "unclear" whether they were being stalked and, if so, by whom. Jessica testified about a speculative connection between Gary and a car she and her mother saw in their neighborhood, claiming that according to an unnamed woman she had corresponded with on the internet, the car was connected to a murder suspect who was also Gary's former coworker and to a man with the same name as one of Gary's friends. Gary denied having anything to do with any stalking. It is the job of the superior court to weigh the credibility of witnesses,[29] and we cannot conclude on this record that the superior court clearly erred in finding it is "unclear" who may be behind the alleged stalking.

---

[28] *See* AS 25.24.150(c)(5) (requiring superior court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

[29] *Williams*, 243 P.3d at 1000 ("[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.").

Nor did the superior court clearly err in finding that Jessica's fears about stalking undermined her ability to provide a stable environment for Simon. Jessica and her mother's extensive testimony about stalking revealed it to be a source of fear and preoccupation for them. And evidence that they told Simon about the stalking supports the superior court's finding that their extensive fears would affect the sense of stability that Simon experienced in their home.

**F.    The Superior Court Did Not Err Or Abuse Its Discretion By Authorizing Gary To Spend Simon's Permanent Fund Dividend (PFD) On Simon's Behalf.**

Jessica argues that the superior court erred by ordering that Gary may spend Simon's PFD "any way he wishes." We find that the superior court's order regarding Simon's PFD does not constitute error or an abuse of discretion.

The custody order issued at the time of the couple's divorce indicated that Simon's PFD "may be spent for the child(ren)'s health, education, and welfare," and ordered Jessica to timely apply for Simon's PFD. The November 2018 custody order states that Gary "may use the child's PFD as deemed appropriate by him, such as for the cost of the child's health, education, and welfare." Identical language appears in the December 2019 custody order.

"Alaska Statute 43.23.005(c) authorizes a parent to claim a PFD on behalf of an unemancipated minor, but the law is silent as to a parent's responsibilities once those funds are distributed."[30] Here, the superior court's standard order regarding Simon's PFDs was not error or an abuse of discretion.

---

[30]    *Ronny M. v. Nanette H.*, 303 P.3d 392, 407 (Alaska 2013).

**G.    The Remainder Of Jessica's Arguments Are Waived For Inadequate Briefing.**

Although we hold the pleadings of self-represented litigants "to less stringent standards than those of lawyers,"[31] "even self-represented litigants must provide more than a cursory statement to be considered on appeal."[32]  The remainder of Jessica's claims in this action — many alleging constitutional violations or criminal activity — lack sufficient specificity to determine the nature of her claim, fail to provide any argument in favor of her claim, or are based on inaccurate characterizations of the superior court's holdings.  Because these claims are "conclusory and inadequately developed," we consider them waived.[33]

## IV.    CONCLUSION

We AFFIRM the superior court's order.

---

[31]    *Larson v. State, Dep't of Corr.*, 284 P.3d 1, 8 (Alaska 2012) (quoting *Capolicchio v. Levy*, 194 P.3d 373, 378 (Alaska 2008)).

[32]    *Antenor v. State, Dep't of Corr.*, 462 P.3d 1, 14 (Alaska 2020).

[33]    *Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 538 (Alaska 2015).