27 P.3d 757 (2001)
D.D., Appellant,
v.
L.A.H., Appellee.
No. S-9894.
Supreme Court of Alaska.
August 10, 2001.
Jennifer L. Holland, Gruenberg, Clover & Holland, Lynne Freeman, Davis, Black, Freeman, LLC, Anchorage, for Appellant.
Peter F. Mysing, Kenai, for Appellee.
Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*758 OPINION

MATTHEWS, Justice.

I. INTRODUCTION

D.D. (Daniell)[1] and L.A.H. (Leif) filed opposing motions to modify custody of their son, T.H. (Travis). Without holding a hearing or making findings the superior court granted Leif's motion and denied Danielle's. We reverse and remand because an evidentiary hearing and findings are required in opposed custody modification proceedings. Further, we hold that the record does not support failing to grant visitation to Danielle during the nine months of the year that Leif has custody.

II. FACTS AND PROCEEDINGS

Danielle and Leif were granted a decree of dissolution of marriage on September 6, 1996. The parties had one child during their relationship, Travis, who was born in December 1994. Danielle also has a daughter from a previous relationship, J.D. (Jane), who is three years older than Travis.
The parties negotiated a dissolution agreement which gave them shared custody of Travis, then twenty-one months old, providing Leif with custody and visitation during approximately seven months of the year and Danielle with custody and visitation for the approximately five remaining months of the year.[2] This arrangement, which was intended to be in effect until Travis commenced school, was made based on a shared assumption that Danielle would be living and studying in Minnesota during the course of the school year, and that Leif would be available to care for Travis full-time during the winter months, when Leif is unemployed. The agreement stated that its visitation schedule
will remain in effect until August 15, 2000. At this time, parents agree to submit to the court a revised custody arrangement to better suit the needs of a child attending school. Parents agree that this temporary arrangement best suits the needs of [Travis] while his mother is finishing her degree, as well as during summer months while his father is working. During winter months, [Leif] is unemployed. The agreement allows [Travis] to stay at home with his father instead of spending unnecessary time in a daycare situation. During summer [Danielle] and her daughter, [Jane] (from a prior relationship) will be on summer break and able to travel to Alaska for the care of [Travis].
By November 1996, Danielle had given up her studies in Minnesota and returned to Alaska. The parties agreed then to share custody of Travis on a week on/week off basis. In May 1997, Danielle moved from Kenai to Anchorage in order to study at the University of Alaska Anchorage, and the parties shifted to a two-weeks-on/two-weeks-off schedule in order to reduce travel time. This continued until the trial court's order of August 12, 2000. The original written custody agreement was never modified to reflect the new 50/50 arrangement.
According to Danielle, in August 1999 Leif agreed that Travis would attend school in Anchorage at Polaris K-12 School, where Jane was already enrolled. Then, following an open house in May 2000 at which Travis was introduced to his future teacher, Leif changed his mind and decided that he wanted Travis to attend school in Kenai. Leif disputes this account and claims that Danielle agreed in August 1999 that Travis would attend school in Kenai and live with Leif during the course of the school year.
On June 19, 2000, Danielle filed a motion to modify child custody and to appoint a custody investigator. Danielle argued that a substantial and material change in circumstances had occurred since the original child custody agreement was made: "Although the parties have shared custody of [Travis] 50/50, he is now of school age and will be ready to start kindergarten this fall." Danielle explained *759 that "[t]he problem we are now facing is where our son [Travis] should be residing during the school year." (Emphasis in original.) Danielle argued that because Travis had been enrolled at Polaris K-12 School, a unique public school attended by his sister Jane; because he and Jane share gymnastics lessons; and because Danielle provides a more stable environment for Travis, it was in Travis's best interests to reside in Anchorage during the school year.
Leif opposed both Danielle's motion to modify custody and her motion to appoint a custody investigator. Leif also filed a counter-motion to modify custody so that he would have custody of Travis during the school year. Leif agreed with Danielle that "[Travis]'s entry into school constitutes a substantial change in circumstances under AS 25.20.110(a) since the parties will no longer be able to share 50-50 custody of [Travis]." Leif explained that his job as a roofer prohibits him from spending time with Travis in the summers but during the winters "he devotes [his] time exclusively to [Travis]." Therefore, Leif argued, it was in Travis's best interests to award Leif custody during the school year. In support of his opposition to Danielle's motions and his own motion to modify custody, Leif submitted his affidavit and several unsworn supporting letters from family members attesting to the strength of Leif's parenting abilities.
Danielle responded, arguing that she was better suited to have primary custody. Danielle submitted her affidavit and notarized letters from friends attesting to Danielle's parenting abilities and to Leif's agreement to permit Danielle to have custody of Travis during the school year.
On August 12, 2000, Superior Court Judge Jonathan H. Link denied both of Danielle's motions and granted Leif's counter-motion for primary custody during the school year. Danielle was not awarded visitation rights during this period. With regard to Danielle's motion to appoint a custody investigator, Judge Link explained that "there is sufficient information in the file to determine the custody and visitation issues raised in the cross-motions to modify custody." With regard to the custody order, the court made no findings and gave no explanation.

III. DISCUSSION

A. It Was Error to Modify the Parties' Custody Arrangement Without Conducting an Evidentiary Hearing.

Danielle argues that under this court's precedent she has a constitutional due process right to be heard prior to the issuance of a custody order. She cites Walker v. Walker for the proposition that an opposed custody modification may not be granted without an evidentiary hearing.[3] In Walker, a father moved for modification of a custody agreement which originally provided the mother with primary physical custody and was modified to provide the father with physical custody during one specified school year.[4] After the mother submitted an affidavit opposing the father's motion and contesting his factual assertions, the superior court granted the father's request to modify the agreement to provide him with legal and physical custody with visitation rights in the mother.[5] We reversed, holding that "[t]he superior court is not permitted to grant an opposed motion to modify custody without holding a hearing."[6]
Leif contends that Danielle waived her right to a hearing by failing to request one as required by Civil Rule 77(e)(1).[7] Leif argues that
[Danielle] was certainly on notice of [Leif's] opposition to her motion and the specific facts he relied upon for that opposition yet she did not request a hearing and elected to submit the case to the court on the affidavits and other evidence. Moreover, *760 even after the court denied her motion to modify custody and [Danielle] filed a motion for reconsideration she still failed to cite a need for an evidentiary hearing.
Leif attempts to distinguish this case from Walker, noting that in Walker the mother was not represented by counsel and was unawaredue to the court's failure to send her notice of an extension of the time to secure counselof the need to request a hearing.[8] Here, Danielle was both represented by counsel and given adequate notice and opportunity to request an evidentiary hearing on her motion.
In reply, Danielle argues that her failure to request a hearing prior to the court's order does not constitute waiver, because pursuant to Rule 77(e)(1) her time to request a hearing had not run by August 12, 2000, when the court entered its order.
We agree with Danielle that the trial court erred in granting Leif's motion to modify custody without conducting an evidentiary hearing. Our decisions in Walker and A.H. v. P.B.[9] require an evidentiary hearing before an opposed motion to modify custody can be granted. In Walker we explained that
[p]rocedural due process under the Alaska Constitution requires notice and opportunity for hearing appropriate to the nature of the case. We have repeatedly held that a party opposing a motion to modify child custody has the right to a hearing before the superior court grants the motion. A hearing is required in order to give the parties an opportunity to present the quantum of evidence needed for the court to make an informed and principled determination.[10]
Leif's contention that Danielle waived her right to a hearing by failing to specifically request a hearing misses the mark. According to Walker, once Danielle "had opposed the motion, she was not obligated to present any further opposition to the court in order to earn a right to an evidentiary hearing."[11]
A.H. is also instructive. In A.H. we stated that "[w]hen a superior court is asked to make a material and substantial change to a visitation arrangement, it should not do so without permitting all parties to be heard, at least telephonically."[12] The opposing party in A.H., like Danielle, did not request a hearing, but merely opposed the motion to modify the visitation arrangement.[13]
This case must be distinguished from cases in which only a minor modification to a custody order is sought. Here the original agreement was not meant to apply once Travis reached kindergarten age. Thus the trial court was essentially making an initial custody determination. By contrast, when a motion to modify seeks only a scheduling change or a similar insubstantial alteration to custody or visitation, the court may act without an evidentiary hearing assuming that there are no factual conflicts that require resolution.[14]
In sum, because Danielle opposed Leif's motion to modify the custody arrangement and raised factual disputes regarding the best interests of their child, the superior court should have conducted an evidentiary hearing.

B. It Was Not Error to Decline to Appoint a Custody Investigator.

Danielle argues for several reasons that the trial court abused its discretion when it refused to appoint a custody investigator: (1) because the only evidence before the court was the contradictory affidavits of the parties; (2) because the court had not provided a hearing; and (3) because Judge Link had not been previously materially involved in this case.
*761 The purpose of custody investigations is to assist trial judges in ascertaining the best interests of a child. Trial courts are granted wide discretion in deciding when to initiate custody investigations.[15] Unless it can be shown that a court would be unable to determine the child's best interest without a custody investigation, a trial court does not abuse its discretion when it decides not to appoint an investigator. The reasons that Danielle gives for appointing an investigator in this case will be eliminated by an evidentiary hearing. Hence, the superior court did not abuse its discretion by declining to seek the assistance of an investigator.

C. It Was Error Not to Make Findings of Fact and to Explain the Reasons for Denial.

Danielle argues that "[c]ustody decisions must be supported by adequate factual findings and conclusions of law addressing all relevant criteria." Danielle accurately cites Howlett v. Howlett for the proposition that this court will reverse modifications of custody made without findings.[16]
Leif responds by maintaining that under Deivert v. Oseira trial courts are not required either to hold hearings or issue findings where they conclude that there should be no change to a custody arrangement.[17] He argues that the court therefore did not need to enter findings or explain its reasons because the order "denied Danielle's modification motion and left custody of the minor child essentially unchanged." Leif's contention that the court's order was not a modification, but "essentially [a] continu[ation of] [Travis's] primary placement with [Leif] during the school year," is incorrect, if not disingenuous. Leif not only opposed Danielle's motion to modify custody, but also counter-moved to modify custody in his favor, and admitted that the parties had shared Travis equally for over three years at the time of the motions. Further, the August 12, 2000 order modifies even the original negotiated agreement because it does not provide for any visitation for Danielle during the course of the school year.[18]

D. It Was an Abuse of Discretion to Fail to Provide for Visitation Between Danielle and Travis During the School Year.

Danielle argues that the order, which "created absolute disruption and chaos for a six year old who had never been separated from his mother and sister for more than two weeks at a time," was, "on its face, not in [Travis's] best interests, and therefore an abuse of discretion."
With neither findings of fact nor a statement on the record of the reasons for the grant of the custody modification, it is impossible to understand the rationale for the court's failure to grant Danielle visitation during the school year. We see nothing in the record that would justify such a lengthy separation and thus conclude that the court abused its discretion in this respect.[19]

IV. CONCLUSION

For the forgoing reasons, we REVERSE the judgment of the superior court and REMAND for proceedings consistent with this opinion.
NOTES
[1] We use pseudonyms for all family members mentioned by name in this opinion.
[2] Under the agreement, Danielle had custody of Travis from May 1 through August 6 and from December 1 through December 31. Leif had custody from August 7 through November 30 and from January 1 through April 30. During the period in which Leif had custody, Danielle was to have visitation rights for a total of five weeks. During the period in which Danielle had custody, Leif was to have visitation for up to three weeks.
[3] 960 P.2d 620 (Alaska 1998).
[4] See id. at 621.
[5] See id.
[6] Id. at 622.
[7] Civil Rule 77(e)(1) provides:

If either party requires oral argument on the motion, that party shall file a notice of hearing within five days after service of a responsive pleading or the time limit for filing such a responsive pleading, whichever is earlier.
[8] See Walker, 960 P.2d at 622.
[9] 2 P.3d 627 (Alaska 2000).
[10] 960 P.2d at 622 (internal quotations and footnotes omitted).
[11] Id.
[12] 2 P.3d at 628.
[13] See id.
[14] See id. (requiring a hearing when "a superior court is asked to make a material and substantial change to a visitation arrangement" (emphasis added)).
[15] See Pearson v. Pearson, 5 P.3d 239, 242 (Alaska 2000).
[16] 890 P.2d 1125, 1127 (Alaska 1995).
[17] 628 P.2d 575 (Alaska 1981).
[18] Assuming the school year runs from September through May, the superior court order would grant custody to Leif for nine months without any provision for visitation and to Danielle for three months without visitation for Leif. This is clearly a modification both from the parties' 50/50 de facto custody arrangement and from the original agreement which gave custody to Danielle for approximately five months of the year.
[19] See I.J.D. v. D.R.D., 961 P.2d 425, 432 (Alaska 1998) (holding that trial courts must make specific findings to support a limited award of visitation).