*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BRANWEN COLLIER, | ) | |
| | ) | Supreme Court No. S-15748 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-06-12452 CI |
| v. | ) | |
| | ) | O P I N I O N |
| WILLIAM A. HARRIS, | ) | |
| | ) | No. 7117 – August 12, 2016 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Jacob A. Sonneborn, Ashburn & Mason, P.C., Anchorage, for Appellant. David W. Baranow, Law Offices of David Baranow, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

A mother and father share joint legal and physical custody of their daughter. The mother moved for sole legal and primary physical custody, alleging that a sustained lack of cooperation between the parents and other changes in their lives justified the modification of custody she requested. She moved in the alternative for a modification of the custody schedule. The superior court found there was no substantial change in circumstances justifying a modification of custody and awarded partial attorney's fees

to the father. We affirm these decisions, but we remand for the superior court to consider whether the mother's proposed modification of the custody schedule would be in the daughter's best interests.

## II.    FACTS AND PROCEEDINGS

Branwen Collier and Will Harris have a daughter, Zada,[1] born in 2004. Branwen and Will's relationship ended in 2006.[2]  In July 2007 they agreed to share Zada's physical custody:  During the school year Will, who did not work weekends, would have custody three weekends per month, and Branwen, who was a student and had flexibility during the week, would have custody most weekdays.[3]  During the summer months they would share custody week on, week off.  The superior court incorporated these agreed terms into a partial custody order,[4] then held a trial in October 2008 to decide legal custody, concluding that joint legal custody was in Zada's best interests.[5]

Less than four months later Branwen moved to modify custody, seeking sole legal and primary physical custody of Zada.[6]  She alleged that communication with Will was no longer effective and that her graduation from school and assumption of full-time employment prevented her from having meaningful time with Zada under the

---

[1]    We used this pseudonym in the first appeal of this case. *Collier v. Harris*, 261 P.3d 397, 400 (Alaska 2011).

[2]    *Id*.

[3]    *Id.*

[4]    *Id.* at 400-01.

[5]    *Id.* at 401.

[6]    *Id.*

existing shared-custody schedule.[7] The superior court denied the motion without a hearing, explaining on reconsideration that Branwen's voluntary changes to her schedule did not amount to a substantial change in circumstances.[8] Branwen appealed to this court and we affirmed on a different rationale. Although we held it was error for the superior court to conclude "that a voluntary change in employment cannot be the basis of finding a substantial change in circumstances," we agreed that Branwen was not entitled to a hearing on her modification motion because the changed circumstances she alleged could not justify granting her sole legal and primary physical custody, the only relief she requested.[9]

In May 2013 Branwen filed the motion to modify custody at issue here, again seeking sole legal and primary physical custody. She asked in the alternative that the superior court modify the custody schedule to reflect both parents' changed schedules. In support of her motion Branwen alleged that she had gotten married, graduated from college, started a new job with conventional working hours, enrolled in a graduate program, and moved into a new home. She alleged that Will had been seriously injured and quit work, enrolled in college, changed residences, and also got married. Branwen asserted that all these changes to the parties' living arrangements, her limited ability to spend time with Zada during her scheduled custody time, and the parties' continued inability to communicate with each other constituted a substantial change in circumstances that justified a modification of custody.

In June 2013 Branwen alleged an additional change — that Zada had been sexually abused. Returning from her custody time with Will, Zada reported to Branwen

---

[7] *Id.*

[8] *Id.* at 401-02.

[9] *Id.* at 407-409.

that a friend's father touched her inappropriately while she was on a camping trip with them. According to Branwen, the police determined that Will had met the father only once, the evening before the trip, and knew little about him.

While Branwen's motion to modify custody was pending she asked the court to appoint a custody investigator because, she alleged, the "parties have little history of effective communication, and it will be impossible for either party to gather the necessary information about the other without the assistance of a neutral investigator." The superior court denied the request, finding that an investigator would not be helpful and would be unnecessarily intrusive. Branwen renewed her request based on an affidavit Will's wife Leah had filed in a divorce action and a letter from Zada's counselor recommending a custody investigation.[10] The court again denied the request.

The superior court held a three-day evidentiary hearing on Branwen's modification motion. The court heard testimony from Will, Branwen, Leah, Zada's Girl Scout leader, and the father of one of Zada's friends. The evidence largely concerned the parents' communication, their living situations, and the incident of sexual abuse.

The superior court issued a written ruling on September 23, 2014, denying Branwen's motion to modify legal and physical custody. The court held that there was "insufficient evidence to demonstrate that a substantial change in circumstances ha[d] occurred that would justify modifying custody" and that "[e]ven if there ha[d] been a substantial change, it [wa]s in the best interests of Zada to have equal access to both her parents." The court also denied Branwen's request to change the physical custody schedule to a 5-5-2-2 system (five days with each parent followed by two days with each

---

[10] Leah filed a petition to divorce Will in September 2013. She later withdrew the petition, offered her support to Will in a letter, and gave testimony at the hearing that favored his position.

parent), though the court found that some change was warranted. It granted leave for the parties to request a hearing "on a workable schedule that benefits Zada and is compatible with the parties' schedules."

Branwen filed this appeal. She argues that the superior court erred by (1) finding no substantial change in circumstances; (2) "failing to conduct a meaningful best interest analysis"; (3) declining to modify the custody schedule to better suit the parents' needs; and (4) awarding Will partial attorney's fees.[11]

## III.    STANDARDS OF REVIEW

"We review a trial court's child custody modification decision deferentially, reversing the decision only when the lower court abused its discretion or when its controlling findings of fact were clearly erroneous."[12] "Abuse of discretion is established if the trial court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[13] The court's broad discretion extends to its determination whether, following an evidentiary hearing, the moving party has proven

---

[11]     Branwen also argues that the superior court erred by refusing to appoint a custody investigator and in several of its evidentiary rulings. We address these arguments briefly. "Trial courts are granted wide discretion in deciding when to initiate custody investigations." *D.D. v. L.A.H.*, 27 P.3d 757, 761 (Alaska 2001) (citing *Pearson v. Pearson*, 5 P.3d 239, 242 (Alaska 2000)). Evidentiary rulings are also reviewed for abuse of discretion. *Noffke v. Perez*, 178 P.3d 1141, 1144 (Alaska 2008) (citing *Bierria v. Dickinson Mfg. Co.*, 36 P.3d 654, 657 (Alaska 2001)). We have considered Branwen's arguments on these issues but conclude that the superior court did not abuse its discretion in making the challenged rulings.

[12]     *McLane v. Paul*, 189 P.3d 1039, 1042 (Alaska 2008) (citing *Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001)).

[13]     *Chesser-Witmer v. Chesser*, 117 P.3d 711, 715 (Alaska 2005) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

a substantial change in circumstances, meaning one that affects the child's welfare.[14]
"Factual findings are clearly erroneous if a review of the record leaves us 'with the definite and firm conviction that the superior court has made a mistake.' "[15]

"An award of attorney's fees under AS 25.20.115 is subject to reversal only for abuse of discretion or if the court's factual findings supporting the award are clearly erroneous. We use our independent judgment to determine whether the superior court applied the law correctly in awarding fees."[16]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion When It Denied Branwen's Motion to Modify Custody.

"Alaska Statute 25.20.110(a) provides that '[a]n award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child.' "[17] The concepts of legal and physical custody deserve separate analysis.[18] In the "two-step process" for modification, "the parent seeking modification must establish a significant change in circumstances affecting the child's best interests;

---

[14]   *Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012). This abuse of discretion standard must be differentiated from the de novo standard we use to review a superior court's decision to deny a hearing on a motion to modify custody; then, "we review the record and arguments de novo to determine whether the party alleged facts which, if true, demonstrate a substantial change in circumstances." *Collier*, 261 P.3d at 405.

[15]   *William P. v. Taunya P.*, 258 P.3d 812, 814 (Alaska 2011) (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207-08 (Alaska 2000)).

[16]   *Collier*, 261 P.3d at 402-03 (internal citations omitted).

[17]   *Hunter v. Conwell*, 219 P.3d 191, 196 (Alaska 2009) (alteration in original).

[18]   *Collier*, 261 P.3d at 403.

only if the parent makes this showing does the court proceed to determine whether modification is in the best interests of the child."[19]  The best interests analysis is based on "the statutory factors enumerated in AS 25.24.150(c)."[20]

### 1. The superior court did not abuse its discretion by concluding there was no substantial change in circumstances to justify modifying legal custody.

Branwen contends that she and Will have demonstrated a "continued lack of cooperation" that constitutes "a change in circumstances sufficient to justify a modification of [legal] custody under AS 25.20.110" and that the superior court erred in failing to recognize this.  We have repeatedly observed that "[s]ustained noncooperation between the spouses is grounds for denying joint custody, because lack of cooperation hinders good communication in the best interests of the child."[21]  By denying Branwen's

---

[19]  *Hunter*, 219 P.3d at 196 (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 647 (Alaska 2005)).  A threshold showing of a significant change in circumstances is necessary "to maintain continuity of care and to avoid disturbing and upsetting the child with repeated custody changes."  *McLane v. Paul*, 189 P.3d 1039, 1043 (Alaska 2008); *see also Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012) ("We have expressed concern that '[c]hildren . . . not be shuttled back and forth between . . . parents unless there are important circumstances justifying such change as in their best interests and welfare.' " (alterations in original) (quoting *Nichols v. Nichols*, 516 P.2d 732, 735 (Alaska 1973))).

[20]  *Heather W.*, 274 P.3d at 482-83.

[21]  *T.M.C. v. S.A.C.*, 858 P.2d 315, 319 (Alaska 1993); *see also Houston v. Wolpert*, 332 P.3d 1279, 1285 (Alaska 2014) ("Joint legal custody may be denied if the parties cannot communicate effectively." (citing *Co v. Matson*, 313 P.3d 521, 524-26 (Alaska 2013))); *Collier*, 261 P.3d at 405 ("We have observed that 'sustained noncooperation by one parent may constitute sufficiently changed circumstances to justify terminating joint legal custody' . . . ." (quoting *Peterson v. Swarthout*, 214 P.3d 332, 341 (Alaska 2009))); *Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991) ("[J]oint legal custody is only appropriate when the parents can cooperate and communicate in the (continued...)

request for sole legal custody, the superior court implicitly decided that the parties' level of cooperation had not deteriorated to the degree that the existing shared legal custody should be changed.

In support of her argument that this was error, Branwen asserts that Will communicated with her only by email or text; ignored her communications for days on end; responded at times with aggression and insults; failed to keep her informed of Zada's activities and important news such as the fact that Will was no longer working; and neglected to provide Branwen's contact information to Leah. Branwen points to similar complaints by Leah to support her charge that the noncooperation is largely Will's fault.

Will counters that the superior court properly relied on the record to find that the parties communicated "in sufficient detail and quality, though challenged in doing so at times, to maintain their joint authority over Zada." He contends that the evidence did not support Branwen's claim that he was "passive-aggressive," that Leah's supportive testimony at the hearing repudiated much of what she had alleged against him in the divorce, and that the evidence showed Branwen's own failures in cooperating with him.

It is evident that the superior court considered the parties' positions about the alleged noncooperation and rejected Branwen's claim that it had deteriorated to such an extent as to preclude shared legal custody. Branwen's counsel questioned Will extensively about his communications with Branwen, focusing on their emails and texts. Will characterized the parties' history as "a working communication," and many of the emails in the record support this characterization. The superior court was in the best

---

[21](...continued)
child's best interest.").

position to determine whether it was accurate.[22]  Indeed, the questioning in this area ended when the superior court had heard enough, observing that it was "ready to move on."  The court continued:  "I understand [Will has] not been the most cooperative on emails and hasn't responded as timely.  Frankly, that happens a lot when people get divorced.  I mean, it would be nice if everybody would cooperate timely, but it happens."  We understand the court's point to be that the parties' ability to communicate, though not ideal, was not unusual in the circumstances and was adequate to support continued joint decision-making.

The evidence was sufficient to support this conclusion.  The superior court did not abuse its discretion when it rejected Branwen's claim that there had been a substantial change in circumstances warranting a change in legal custody.[23]

---

[22]     *See Williams v. Barbee*, 243 P.3d 995, 1000 (Alaska 2010) ("[I]t is the function of the trial court, not of this court, to judge witness' credibility and to weigh conflicting evidence." (quoting *Michele M. v. Richard R.*, 177 P.3d 830, 834 (Alaska 2008))).

[23]     Branwen argues that the superior court "impermissibly consolidated its physical and legal custody analyses" and in doing so failed to recognize that her claim to legal custody rested on the parties' failure to communicate rather than the other changed circumstances that the court addressed explicitly in its written order.  But the order explicitly recognized that Branwen sought modification of both legal and physical custody, noting that the two types of custody had previously been decided on different dates, and ultimately denied "Branwen's motion to modify custody seeking sole legal and primary physical custody."  We find it implicit in the superior court's order, and apparent from its on-record comments, that it rejected Branwen's only argument for a modification of legal custody — the alleged sustained lack of cooperation — before going on to consider physical custody in greater detail.

**2. The superior court did not abuse its discretion by concluding there was no substantial change in circumstances to justify modifying physical custody.**

Branwen also challenges the superior court's denial of her motion to modify the 50-50 physical custody arrangement and award primary physical custody of Zada to her. She alleges that the court "improperly relied on an arbitrary set of isolated changes, rather than aggregate change, in its determination that Branwen had not established a substantial change." Branwen contends that the superior court failed to assess the aggregate impact of the many changes in the lives of Branwen, Will, and Zada, while mistakenly narrowing its focus to gauge the separate impact of only three changes, listed in the introductory section of the court's written order: "(1) the parties' financial positions have changed[ in that] Branwen got a new job and house while Will lost his job due to disability and returned to school; (2) Will left Zada unattended in his car while at work; and (3) Zada suffered sexual abuse as a result of Will's neglect." Branwen also argues that the superior court's factual findings as to two of these three changes are clearly erroneous.

"A change in circumstances is unlikely to be substantial enough to 'overcome our deep reluctance to shuttle children back and forth between parents' unless the change affects the children's welfare and 'reflect[s] more than mere passage of time.' "[24] The analysis is heavily fact-intensive (though certain changes, like an out-of-state move, are substantial as a matter of law).[25] If a number of circumstances are alleged

---

[24] *Hope P. v. Flynn G.*, 355 P.3d 559, 565 (Alaska 2015) (alteration in original) (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 381 (Alaska 1998)).

[25] *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (holding that a parent's out-of-state move constituted a substantial change in circumstances as a matter of law).

to have changed, the superior court is required to consider them in the aggregate to determine whether they amount to a substantial change.[26]

Here, the superior court's written order specifically addressed both parties' living arrangements, their respective employment, financial, and marital statuses, the instance in which Will left Zada unattended in the car, and Zada's report of sexual abuse. The superior court specifically found that the changes in residence, employment, finances, and marital status had not been shown to negatively impact Will's ability to care for Zada and that the instances of alleged neglect were one-time events and not likely to recur. The court concluded: "Considering all of the above *in the aggregate*, there is insufficient information to conclude that there has been a 'substantial change in circumstances.' " Branwen's argument does not persuade us that the superior court did not do what it said it did — consider the changes in the aggregate, as the law requires.[27]

Branwen argues that the superior court erroneously failed to consider the improvements in her life, focusing solely on the changes in Will's. But when reviewing the court's order "we do not parse each alleged factual assertion of change, but instead [we] look to see whether the circumstances in the aggregate establish a change of

---

[26] *See Long v. Long*, 816 P.2d 145, 152 (Alaska 1991) ("[W]e have reviewed multiple changed circumstances to determine whether, in the aggregate, the changes were sufficient to justify a reevaluation of a custody decree." (citing *Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001))).

[27] Branwen faults the superior court for failing "to establish any beginning point for the change in circumstances analysis" and failing to "establish the baseline facts for its comparison." We reject this argument. The superior court's order correctly stated that "[w]hether there is a change in circumstances is measured 'relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify' " and identified the dates of the prior orders from which it had to measure changes relevant to physical custody (2007) and legal custody (2008).

circumstances."[28] The superior court heard evidence of all Branwen's asserted changes at the hearing; its written order addressed only those it considered important to its decision. It was under no duty to address every one.[29]

Branwen also argues that "the court's factual findings on two of the three changes it did consider were clearly erroneous." She first takes issue with the superior court's finding that although Will left his job, "his wife still works and provides for the family," and that Will's loss of employment therefore had no significant impact on his ability to provide for Zada. According to Branwen, the evidence showed that Will and Leah did not act as "a unified marital unit for financial and parenting purposes" and that Leah had not "accepted financial responsibility for [Zada]." But Leah testified that the couple maintained both separate and joint finances and that Will's attorney's fees were concerning to her because the money to pay them came out of "the household money." And Branwen points to no evidence that Will and Leah's changed financial situation had a negative impact on Zada. Giving " 'particular deference' to the trial court's factual

---

[28] *Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012).

[29] *Cf. Park v. Park*, 986 P.2d 205, 207 (Alaska 1999) ("The court [when considering the best interest factors of AS 25.24.150(c)] needs only to discuss those factors that it considers actually relevant in light of the evidence presented in the case before it; express mention of each factor is not required, but the court's findings must at a minimum 'give us a clear indication of the factors which [it] considered important in exercising its discretion or allow us to glean from the record what considerations were involved." (second alteration in original) (internal citations omitted) (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137 n.2 (Alaska 1997))).

findings when they are based primarily on oral testimony,"[30] we see no clear error in the superior court's finding that Leah "still works and provides for the family."

Second, Branwen contends that the superior court clearly erred in finding that Zada's risk of exposure to sexual abuse was the same in her house as at Will's; the trial court observed that "[t]estimony at trial showed both Branwen and Will previously allowed Zada around her abuser and trusted him up until Zada informed them of her abuse." Branwen points to her uncontradicted testimony "that she had never met [Zada's abuser] and that [Zada] had never spent time with his daughter outside of school." The superior court does appear to have erred in finding that Branwen knew Zada's abuser, but the evidence nevertheless supports its conclusion that Will's decision to allow Zada to go camping with her friend did not warrant a modification of physical custody. The court found that Will had no reason to believe that the "acquaintance was a threat to their child prior to the incident" and that "in the aftermath of such trauma, it is important that both parents be there for Zada." We see no clear error in these findings.

The evidence supports the superior court's conclusion that the various changes Branwen alleged were not substantial enough, considering their effect on Zada,[31] to justify a modification of the order requiring that the parents share equally in Zada's

---

[30]     *See Riggs v. Coonradt*, 335 P.3d 1103, 1107 (Alaska 2014) ("We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence." (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005))).

[31]     Whether a change is substantial is appropriately gauged by its effect on the child. *See Long*, 816 P.2d at 151 (holding that the superior court's findings regarding substantial change in circumstances "correctly focuses on the children . . . . It is irrelevant that the parents' behavior patterns remained constantly contentious . . . . What is important is that the circumstances of the children *worsened* as a result of their parents' actions.").

physical custody. The superior court did not abuse its discretion when it denied Branwen's motion.[32]

B. **It Was An Abuse Of Discretion Not To Make A Best Interests Determination For Purposes Of Modifying The Existing Custody Schedule.**

Branwen argues in the alternative that the superior court erred when it denied her motion to modify the parents' current custody schedule (three weekends a month with Will during the school year and week on, week off during the summer). The superior court found "a change in circumstances, versus a substantial change in circumstances, such that the custody schedule should be modified to better serve the parties and Zada" but it concluded it could not grant the 5-5-2-2 schedule Branwen requested because "insufficient testimony was provided as to whether this schedule was possible for the parties and in Zada's best interest." The superior court then "grant[ed]

---

[32] Although a best interests analysis was unnecessary once the superior court decided there had been no substantial change in circumstances justifying a modification of custody, the superior court went on to consider Zada's best interests as an alternative holding. The court determined that it would not be in Zada's best interests "to give one parent primary custody and sole legal custody" even if there had been a substantial change in circumstances. Branwen takes issue with this alternative holding, contending that the superior court improperly limited its analysis to only one of the statutory best interest factors — "the capability and desire of each parent to meet [the child's physical, emotional, mental, religious, and social] needs," AS 25.24.150(c)(2) — and placed too much emphasis on it. We disagree. "[I]t is sufficient if the court's findings provide 'a clear indication of the factors [that the court] considered important in exercising its discretion or allows us to glean from the record what considerations were involved.'" *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1092 (Alaska 2015) (second alteration in original) (quoting *Rosenblum v. Perales*, 303 P.2d 500, 504 (Alaska 2013)). The superior court's written order gives us "a clear indication" of how it viewed the evidence. We conclude that it did not abuse its discretion in its consideration or its weighting of the statutory factors, and the record supports its conclusion that assigning sole legal custody and primary physical custody to one parent would not be in Zada's best interests.

leave to the parties to request a status hearing on a workable schedule that benefits Zada and is compatible with the parties' schedules." On appeal Branwen argues that the superior court, after hearing three days of testimony, had the evidence it needed to decide whether her proposed custody schedule was in Zada's best interests.

The superior court may modify an existing custody schedule if "it determines that 'a change in circumstances requires the modification of the award and the modification is in the best interests of the child.' "[33] Alaska law is clear that "a lesser showing is required for a 'change in circumstances' determination when a parent seeks to modify visitation rather than custody."[34] The superior court did not err in finding that a change had occurred that warranted modifying the custody schedule; both parents agreed that the schedule was "confusing" and they would benefit from a change.

Having received all the evidence the parties believed necessary and having decided that some modification to the schedule was warranted, the superior court should have gone on to analyze Zada's best interests and modify the schedule as necessary to satisfy them. We therefore remand for a best interests analysis relating to the requested modification to the custody schedule; whether to take new evidence is a matter we leave to the superior court's discretion.

### C. The Superior Court Did Not Abuse Its Discretion In Awarding Will 50% Of His Actual Attorney's Fees.

Branwen also alleges error in the superior court's award of attorney's fees to Will. "In an action to modify . . . an order providing for custody of a child or

---

[33] *Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999) (citing AS 25.20.110(a)).

[34] *Martin v. Martin*, 303 P.3d 421, 425 (Alaska 2013) (quoting *Collier v. Harris*, 261 P.3d 397, 408 (Alaska 2011)); *see also Morino*, 970 P.2d at 428 ("The change in circumstances required to modify visitation, though, is not as great as that required for a change in custody.").

visitation with a child, the court may, upon request of a party, award attorney fees and costs of the action."[35]  In doing so, "the court shall consider the relative financial resources of the parties and whether the parties have acted in good faith."[36]  The superior court's order on fees in this case addressed both considerations:  It first found that "[t]here is a clear financial inequity between the parties" with Branwen having "vastly greater earnings and financial abilities to litigate"; it then found that "[w]hile it is true [Branwen] has been highly litigious, the court does not reach the conclusion that she has acted in 'bad faith.' "  The court awarded Will 50% of his actual reasonable attorney's fees.  Branwen asserts that given the superior court's express finding that she did not act in bad faith, the award was in effect a "litigation penalty" penalizing her "for exercising a substantial right."

However, an award of attorney's fees in this context is not necessarily predicated on a finding of bad faith; AS 25.20.115 requires only that the court consider the issue when deciding an award.  In support of her contrary argument Branwen cites *House v. House,* in which we held that attorney's fees should be awarded in custody modification cases only if "one party acts 'willfully and without just excuse.' "[37] Branwen observes that *House* has never been expressly overruled.  She also notes, however, that it predated the legislature's enactment of the controlling statute, AS 25.20.115.  In our first decision interpreting that statute, we explained that the superior court was now required to consider both bad faith *and* the parties' relative

---

[35]     AS 25.20.115.

[36]     *Id.*

[37]     779 P.2d 1204, 1209 (Alaska 1989) (quoting *L.L.M. v. P.M.*, 754 P.2d 262, 265 (Alaska 1988)).

- 16 -                    **7117**

financial circumstances.[38]  And neither factor necessarily takes precedence over the other.[39]

When the superior court properly applies the statute, "[a]n award of attorney's fees under AS 25.20.115 is subject to reversal only for abuse of discretion."[40] The superior court's findings in this case are supported by the record; it did not abuse its discretion in awarding attorney's fees to Will.

## V.    CONCLUSION

We REMAND for findings on Zada's best interests as they relate to a new custody schedule.  In all other respects we AFFIRM the judgment of the superior court. We do not retain jurisdiction.

---

[38]     *S.L. v. J.H.*, 883 P.2d 984, 985-86 (Alaska 1994).

[39]     *Id.*; *see also Otto v. Otto*, No S-8411, 2000 WL 34545648, at *3 (Alaska Mar. 8, 2000) ("We have never construed [AS 25.20.115] to establish a presumptive entitlement to an award of full fees; rather, we have emphasized that neither relative financial resources nor the absence of good faith has primacy in determining an award." (internal citations omitted)).

[40]     *Collier v. Harris*, 261 P.3d 397, 402-03 (Alaska 2011).